## HAMMOND *v.* THE STATE.

1. In charging a jury the rule contained in section 1029 of the Penal Code, relating to acquiescence or silence as an admission, the court should not fail to instruct the jury, in connection with that rule, that the jury are to determine whether or· not, under all the circumstances, an answer or denial was required.

2. While expert witnesses may give their opinions as to facts, principles, and rules involved in the science in which they are learned, they are not, as to questions lying out of the domain of the science, art, or trade in which they are experts, exempt from the restriction of the rule which requires witnesses to state facts and not opinions.

3. In view of the statement of the defendant, the court did not err in instructing the jury, in substance, that the defendant "denies that he killed his wife, and says that she committed suicide." For the defend-in his statement said: "Gentlemen of the jury, I want to state to you that I am not guilty of killing my wife. . . On Saturday before my wife killed 'herself on the following Monday night, I left Columbus and went to Juniper, Ga. . . That was on Saturday before my wife committed suicide on Monday night."

4. In the course of his argument to the jury the solicitor-general said: "During my six years of experience as a prosecuting attorney, this evidence is as strong as any case of circumstantial evidence I have ever had." Thereupon counsel for the defendant made a motion for a mistrial, which the .court overruled. *Held* that this was not error. The remarks were not of such a character as to require the grant of a new trial because of the use of the language by the prosecuting attorney. *Nix* v. *State,* 149 *Ga.* 304, 311 (100 S. E. 197), and cit.

5. Other language used by counsel for the State in the argument to the jury is disapproved.

No. 3626. DECEMBER 11, 1923. ·.

Indictment for murder. Before Judge Munro. · Muscogee superior court. January 27, 1923.

*W. H. McCrory* and *Arnold & Battle,* for plaintiff in error.

*George M. Napier, attorney-general, W. R.· Flournoy, solicitor-general, Seward M. Smith, asst. atty-gen.,* and *McLaughlin & Foley,* contra.

BECK, P. J. The plaintiff in error was tried for the offense of murder, the indictment under which he was tried alleging that he did feloniously and with malice aforethought kill Winnie Hammond by shooting her with a pistol. The decedent was the wife of the accused. . The jury trying the case returned a verdict of guilty, with a recommendation; and the defendant thereupon made a motion for new trial, which was overruled; and to the judgment overruling the motion he excepted.

1. There was evidence introduced by the State showing that shortly after the homicide the defendant's little daughter, a child of tender years, addressing the defendant, said to him, " Papa, why did you kill Mama? She was not sick; she ought not to die." And in the course of his instructions to the jury the court charged: " Now, the State in this case contends that the defendant's daughter said to him, ' Papa, why did you kill Mama? She was not sick; she ought not to die.' The State invokes a charge on the following principle of law: Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission. Now, the defendant denies that such a statement was made. The defendant denies that he heard such a statement. Now, if the defendant did not hear such a statement, if there was no such statement made, or if the defendant heard it and on account of trouble — on account of grief — failed to notice it, you would not be authorized to consider that as an admission. Now, if you should believe that the State has shown beyond a reasonable doubt that such a statement as that was made in the presence of the defendant, and you should further believe that the defendant heard the statement and that he made no denial of the charge, why, as I have stated to you, under the law you may consider that as an admission." We are of the opinion that this charge was error. True, it states in substance the rule as to acquiescence or silence, as laid down in section 1029 of the Penal Code, which reads as follows: " Acquiescence, or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." But in the charge under consideration the court instructed the jury that if they believed from the evidence there had been shown beyond a reasonable doubt that the statement was made in the presence of the defendant, and that if they should further believe that the defendant heard it and made no denial of the charge, then, to use the court's own language, " under the law you may consider that as an admission." This statement of the law by the judge should have been qualified by submitting to them the question as to whether the statement required an answer or denial; and then, instead of stating to the jury, " you may consider that as an admission," he should have instructed them that they would be authorized to treat it as an admission if they found that under the circumstances the defendant was required to make an answer or denial.

56

2. One theory of the homicide advanced by the defendant was that the decedent committed suicide. The evidence as to the homicide was entirely circumstantial. Among other circumstances proved was, that, shortly before the decedent was killed, oil had been applied to the pistol of the defendant with which the killing was done, and that there was a considerable quantity of the oil upon the pistol and was still upon the pistol at the time the shot was fired and for sometime afterwards. When the witness I. C. Evans, a practicing physician, introduced by the State, was called to the stand, he was asked the question whether or not the decedent could have fired the shot that killed her. The wound was in the face, near the nose. In one part of his evidence Dr. Evans had testified that she could have fired it. He was interrogated further upon this point, and this question was propounded by counsel for the State. " Mr. Arnold asked if it was possible for her to have fired the shot. I understand you said it was possible; but doctor, I will ask you this question: from having made an investigation, the condition of the body, the condition of the wound, the pistol, the size of the pistol, the grease on the pistol, and the hand over here and this hand here, in your opinion could she that night as you found her have fired that shot?" This was objected to by counsel for the defendant, on the ground that it called for an opinion by the witness and the determination by him of a question that was for solution by the jury; that the witness should state facts and not an opinion. The witness was a practicing physician, and in matters connected with his profession he was an expert witness. Of course, it is a well-known exception to the general rule requiring witnesses to testify to facts and not their opinion, that, in matters involving questions of science, art, trade, or the like, persons of skill may speak not only to the facts, but give their opinions in evidence, and may express their opinions as to the application of these general facts to the special circumstances of the matter under investigation, whether these circumstances have fallen under their own observation or have been given in evidence by others. And the witness in question, a practicing physician, could have testified whether, from the standpoint of an anatomist or a physiologist, it was possible that the dead woman could have fired the pistol; and he had answered that it might be possible. But he was interrogated further, and his attention was called to the

blood, and the lack of finger-marks, and the lack of odor or evidences of oil, and he answered, " Well, the blood and the lack of finger-marks, and the lack of odor or evidences of oil, I don't believe she could have fired the pistol as it was fired." We have considered here together the evidence objected to in three grounds, the 4th, 5th, and 6th grounds of the amended motion. It will be seen that the witness in question, the expert, was not only called upon to give his answer to the question of the science in which he was an expert, but he was permitted to answer as to whether or not, considering the presence of blood, and the lack of finger-marks, and the lack of odor of oil about the person of the deceased, it was possible for her to have fired the shot. As to these questions of fact the jury and the jury alone were the judges. This examination as to the question of the possibility of the woman having fired the pistol that ended her life brought from the doctor, in substance, the expression of an opinion that, considering the facts that the pistol had kerosene oil upon it in such a quantity that the woman could not have handled it without getting some of it upon her hands or fingers, and that there was no odor of kerosene oil upon the hands or about the person, she could not have fired the shot. This was a question of vital importance in this case, and whether a woman could have handled a pistol covered with kerosene oil without getting enough of it on her hands to make them smell of the oil was not a question to be determined by an expert in the science of medicine or anatomy, but was a question to be solved by the jury; and it was hurtful error to admit the evidence objected to.

3, 4. The rulings made in headnotes 3 and 4 need no elaboration.

5. A ground of the motion for new trial is also based upon the following statement made by the solicitor-general in his address to the jury: " If the State has not made out a case, and they convict this man and the evidence does not authorize it, nobody will set it aside quicker than the judge, and if refused may be appealed to the Supreme Court. If he should be turned loose, it was at an end." We are of the opinion that argument of this kind should not have been employed. It tended to lessen the sense of the peculiar and sole responsibility resting on the jury. The question for their solution was the sufficiency of the evidence, under the

rules of law relating to circumstantial evidence, to convince their minds beyond a reasonable doubt of the guilt of the accused. The suggestion that if they should convict him, and the evidence did not authorize it, the judge would set it aside, should not have been made. Whether the use of this language required the grant of a mistrial we do not decide. We content ourselves with disapproving it, as a new trial is granted upon other grounds, and the language will not be used on the next trial.

*Judgment reversed. All the Justices concur.*

RUSSELL, C. J., and HILL, J., concur in the result in the case; but they are of the opinion that the assignments of error dealt with in the fourth and fifth divisions of the opinion are meritorious and present grounds requiring the grant of a new trial.

ATKINSON, J., concurs in the result of the case, but is of the opinion that the assignment of error dealt with in the fifth division of the opinion is meritorious and presents ground requiring the grant of a new trial.