36730.  KNUDSEN *v.* DUFFEE-FREEMAN, INC.

DECIDED MAY 23, 1957—REHEARING DENIED JUNE 6, 1957.

874

*Johnson, Hatcher & Meyerson,* for plaintiff in error.

*Marvin G. Russell, Turner Paschall, Welborn B. Cody,* contra.

QUILLIAN, J.   1.   Special grounds 4 and 5 need not be passed upon.   They relate to the foundation laid for the evidence we hold in the other divisions of this opinion to be inadmissible.

2.   Ground 6 complains of the admission in evidence of a mass of documentary evidence, in which were contained impressions and conclusions of various parties as to the plaintiff's mental state and that he was a malingerer.   These documents

came into existence several years before the trial, and did not purport to convey any view or impression as to such matters at the time the plaintiff was alleged to have been negligently injured by the defendant.

Ground 7 complains of a letter dated October' 3, 1938, written by one who purported to be a physician to the U. S. Employees' Compensation Commission. The letter contained a diagnosis of the plaintiff's mental condition as a malingerer. The letter was objected to on the ground: "that the document had not been definitely authenticated by the custodian who brought the record into court in that it had not been shown that he had any knowledge of or that he had had any part in keeping of the records, the evidence showing simply that the witness had been employed during the period of time involved at Savannah, Georgia, and then in Jacksonville, Florida, and that the records came to him from Washington, and the first time he had ever seen them was when he received them from Washington.

The evidence was further objected to on the ground that it was hearsay, purporting to be a report of opinion evidence by a party who did not state that he himself had made any examination insofar as the patient was concerned but who merely reported a consolidated opinion and diagnosis of this particular party by other individuals, and the introduction of the evidence was an attempt to introduce opinion evidence when the person who expressed the supposedly expert opinion was not before the court for cross-examination.

The evidence was further objected to in that the purported report from the medical officer in charge had attached to his report a purported copy of an opinion by some party designating himself as an "M. D." without his name even being signed to the report, and the attached document being an opinion of Dr. Eric Oldberg was hearsay to Dr. Rose, the medical officer in charge who signed the letter; and Dr. Rose himself, who purportedly made the entry, if he were on the stand would not be allowed to testify as to what Dr. Oldberg said.

The evidence was further objected to on the ground that the evidence was irrelevant and immaterial in that "the evidence offered would tend to show that Mr. Knudsen did not sustain

any serious injury in 1936 or in 1938, which fact would be irrelevant and immaterial to the inquiry in this case even if proved and believed by the jury, since the only relevancy of past injuries of the plaintiff to the present injury would be to show what effect if any such past injuries had on the plaintiff's present condition, and a conclusion of a person that the plaintiff did not suffer any serious injury in 1938 would not be relevant or material to this inquiry."

Code (Ann.) § 38-710 provides: "Any photostatic or microphotographic or photographic reproduction of any original writing or record which may be or has been made in the regular course of business to preserve permanently by such reproduction the writing or record shall be admissible in evidence in any proceeding in any court of this State, and in any proceeding before any board, bureau, department, commission or agency of the State, in lieu of and without accounting for the original of such writing or record. Any enlargement or facsimile of such reproduction shall likewise be admissible if the original of such reproduction is in existence and available for inspection under direction of the court or the agency conducting the proceeding."

Code (Ann.) § 38-711 provides: "Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term 'business' shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not. This section shall be liberally interpreted and applied."

The former Code section simply permits photostatic, micro-

photographic, and photographic reproductions of original writings or records made in the regular course of business to be admitted in evidence without accounting for the original.

The latter section contains what is referred to by courts of other States and textbooks as the "Uniform Business Records as Evidence" statute. There is no material difference in the Georgia statute and similar statutes of the other States. It makes admissible writing and records kept in the regular course of business, unverified by the person who made such writing or the entries which make up such records. It does not authorize the introduction of papers containing the opinions of experts or the diagnosis of physicians.

Similar statutes of other States have been so construed. "During the trial of the case the appellee offered in evidence over objection the report of Dr. Rathbone radiographer. This report on a form provided by the Baltimore and Ohio Railroad, appellant, dated December 11, 1946, contained the following: 'Portion of body examined Lumbar spine and sacroiliac joints. Result of examination. There is no evidence of bone or joint injury or disease. The lumbro-sacral facets are the A-P type, and frequently cause low back pain.' This report was offered in evidence during the testimony of Dr. Zimmerman, called by the appellee. He testified that it was an X-ray report from Dr. Rathbone, to whom he had sent Zapf for an X-ray and report, and that the report was rendered to him in the usual course of his dealings with Dr. Rathbone. This report was nothing more than what Dr. Rathbone said. Certainly Dr. Zimmerman was not competent to testify as to what Dr. Rathbone concluded from an examination of those X-ray plates. United Surety Co. v. Summers, 110 Md. 95, 110, 72 A. 775; Myers v. State, 137 Md. 496, 501, 113 A. 92. Compare United Rys. & Electric Co. v. Dean, 117 Md. 686, 702, 84 A. 75. Appellee strenuously contends that this report was admissible under Code, Article 35, Section 68, 1947 Supplement, Proof of Accounts, which provides for the introduction of certain memorandums or records made in the regular course of business. Bethlehem-Sparrows Point Shipyard, Inc. v. Scherpenisse, supra; O'Donnell v. State, 188 Md. 693, 53 A.2d 688; Corozza v.

Williams, 190 Md. 143, 57 A.2d 782; Morrow *v.* State, 190 Md. 559, 59 A.2d 325. Dr. Rathbone's report could not be admissible under that section of the Code. This report was based on a medical opinion which could only be given by one skilled in reading the X-ray picture and by one who had examined that picture. It was not admissible as a memorandum occurring in the regular course of business, nor was it a verbal act or part of the res gestae or a mere hospital or nursing record. Snyder *v.* Cearfoss, 190 Md. 151, 57 A.2d 786. When such a technical medical report is offered, the doctor should be subject to cross-examination as to the reasons for his findings. The admission of that report in evidence was therefore error." Baltimore & O. R. Co. *v.* Zapf, 192 Md. 403 (64 Atl. 2d 139, 6 A. L. R. 2d 401, 405).

Code § 38-1710 provides that the opinion of an expert witness is admissible when based upon the proven facts of the case, and our courts have uniformly held that for the testimony of an expert witness to be received, his qualification as such must be first proved. *Alabama Great Southern R. Co.* v. *McBrayer,* 65 *Ga. App.* 153, 157 (5) (15 S. E. 2d 563); *Flemister* v. *Central Ga. Power Co.,* 140 *Ga.* 511, 512 (3) (79 S. E. 148). If that prerequisite is not met the opinion of the expert must be excluded. In *Glover* v. *State,* 129 *Ga.* 717, 718 (9) (59 S. E. 816) it was held that the witness was not necessarily an expert in a particular field of science or skill because he professed to be, nor did it necessarily follow that he was not qualified to testify as an expert because he himself was of the opinion that he was not entitled to be so accredited.

Code § 38-1705 provides: "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him."

To construe Code § 38-711 to permit the admission in evidence of a letter in which is contained the diagnosis of a party's condition by a witness concerning whose qualification as an expert there is no evidence, and a memorandum opinion not signed by any person but simply enclosed in the letter, when the party in whose interest the letter and memorandum opinion are offered is not afforded the opportunity to examine either the

author of the letter or the maker of the memorandum would in effect repeal Code § 38-1705 and ignore opinions of our Supreme Court and of this court. Indeed, such an interpretation would mean that the new statute supersedes practically our whole system of jurisprudence.

The danger of such a course, the peril of substituting unverified records and similar evidence to fair trials and liberties of the people is ably treated by Chief Justice Duckworth in *Camp* v. *Camp*, 213 *Ga.* 65 (97 S. E. 2d 125).

Here it must be observed that in some States it has been the practice that proof having little or no authenticity has been accepted by the courts.

The Federal statute, 28 U. S. C. A. 473, § 1732, which is similar to our Code § 38-711 has been variously construed by the Federal courts. Among those taking a very liberal view is Reed *v.* Order of United Commercial Travelers of America, 123 Fed. 2d 252.

In New York Life Ins. Co. *v.* Taylor, 147 Fed. 2d 297, 303, it is said: "Hospital records are no different from any other kind of records kept in the regular course of business. They must be subjected to the same tests as to subject matter. Regularly recorded facts as to the patient's condition or treatment on which the observations of competent physicians would not differ are of the same character as records of sales or payrolls. Thus, a routine examination of a patient on admission to a hospital stating that he had no external injuries is admissible. An observation that there was a deviation of the nasal septum is admissible. Likewise, an observation that the patient was well under the influence of alcohol. But the records before us here are not of that character. The diagnosis of a psychoneurotic state involves conjecture and opinion. It must, therefore, be subjected to the safeguard of cross-examination of the physician who makes it. And accounts of selected items from interviews with patients must be subject to the same safeguard. . . The opinions here relate to neurosis, a condition short of insanity, on which there are countless theories and infinite diagnostic possibilities. It is difficult to conceive of records in which the right of cross-examination is more important than

the conjectures of a psychiatrist on a psychoneurotic condition.

"The drastic impairment of the right of cross-examination resulting from the admission of this type of unsworn observation and opinion evidence will be recognized by anyone familiar with the psychology of a jury trial. The unsworn psychiatric diagnosis would be introduced, with appropriate fanfare as to the distinguished character of the alienist who made it, but who is not called as a witness. The opposing party might have plenty of data to shake this testimony on cross-examination, yet he would have to remain silent while a strong prima facie case is made against him. The risk of perjury would be neatly avoided because the real witness is not sworn."

But whatever the interpretation of the Federal statute by the United States courts our rules of evidence and the uniform holdings of our appellate courts require the construction of Code § 38-711 that we have given it.

Counsel for the defendant insists that the letters referred to were admissible under the provisions of Code § 38-302. That section is a qualification of the hearsay rule and provides that "conversation, letters and replies, and similar evidence are facts to explain conduct and ascertain motives" and hence admissible as original evidence. The letters and other documents admitted, and that we hold should have been excluded were, in part, communications between strangers to the case, not between parties to the case or persons for whose statements the parties might be legally responsible. It is apparent from the holding in many Georgia cases, notable among which are *Hickson* v. *Bryan*, 75 *Ga.* 392 (1), *Clarke* v. *Alexander & Wright*, 71 *Ga.* 500 (5), and *Davis* v. *State*, 25 *Ga. App.* 532 (4) (103 S. E. 819) that none of the documents concerning the admissibility to which this opinion relates were admissible under Code § 38-302. Both grounds 6 and 7 of the amended motion show reversible error.

3. Grounds 8 and 10 complain that the court overruled objections to certain questions propounded by the defendant to one of its witnesses. The answers to the questions were not responsive to the questions and were in no way prejudicial to the plaintiff's cause. The grounds show no error.

4. Ground 9 is without merit. The evidence admitted over the plaintiff's objection was not admissible but the objection interposed was on the wrong ground and incomplete, hence insufficient to raise the question as to whether the evidence was competent.

5. Special grounds 11, 12, and 13 complain of instructions given the jury as to rules of evidence that certain factual situations should be employed in determining the weight to be given the plaintiff's testimony, the presumption arising from the failure to produce evidence, and the effect of a party having previously made statements contradictory to his testimony. Since the evidence adduced upon another trial may be entirely different in its scope and effect from that submitted on the trial we now review it would serve no useful purpose to pass upon those grounds.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*