## 64833. FIRST OF GEORGIA INSURANCE COMPANY v. WORTHINGTON.

QUILLIAN, Presiding Judge.

This appeal was taken from a judgment entered on a jury verdict in favor of a plaintiff who sought recovery against the defendant insurance company for windstorm damage to his insured merchandise. This is the second trial of the case. On the first appeal we reversed a jury verdict on the grounds that the trial judge failed to charge the jury on the measure of compensatory damages and because the damages found were not sustained by the evidence. See *First of Ga. Ins. Co. v. Worthington,* 156 Ga. App. 588 (275 SE2d 87).

During the trial the positions taken by each of the parties and the facts giving rise to the action as well as sustaining their contentions may be briefly summarized as follows. On the morning of April 18, 1978, the plaintiff arrived at the building where his retail business was located. Early that morning there had been an electrical storm with heavy rain. Upon entering the building the plaintiff found a large hole in the roof from which water had entered damaging merchandise within the confines of the building. This merchandise was insured by the defendant insurance company against loss resulting from windstorm. The particular provision of the policy read: "The company shall not be liable as respect these perils for loss to the interior of the buildings or the property covered therein caused . . . by rain, snow, sand or dust, whether driven by wind or not, unless the buildings covered or containing the property covered shall first sustain an actual damage to roof or walls by the direct action of wind or hail and then shall be liable for loss to the interior of the buildings or the property covered therein as may be caused by rain, snow, sand or dust entering the buildings through openings in the roof or walls by direct action of wind or hail."

After investigation of the plaintiff's claim, the defendant insurance company refused to pay on the basis that the loss was not caused by windstorm within the meaning of the policy. This gave rise to the present action brought by the plaintiff to recover the loss sustained by water damage. It was shown by uncontradicted evidence that standing on top of the roof, at the time of the incident, was a large air conditioner which after the collapse of the roof was found in the opening created thereby. Furthermore, at the point of collapse the roof was supported by a main beam of timber which was broken in half.

During the course of the trial, apparently both sides agreed, as testified to by one of defendant's expert witnesses, that there were three possible reasons for the roof's collapse: 1) that the roof or the

timber supporting it was rotted or defective 2) that water ponded on the roof in sufficient quantities to cause it and the main beam supporting it to collapse 3) that wind of sufficient velocity caused the air conditioner to topple over breaking through the roof. Witnesses for both sides concurred that the roof was not defective and the timber supporting it was sound and would not have collapsed except for some force which shattered it. This left two reasons, one of which was urged by the plaintiff, the other by the defendant.

The plaintiff contended that the force of strong or high winds had caused the air conditioner to topple over and fall through, smashing a hole in the roof. In support of his contention the plaintiff introduced evidence tending to show that high winds were present during the rainstorm. Plaintiff, himself, testified that on going to work the morning in question that he noticed a tree blown down and "lots of limbs" in the streets about one half mile from the store. The person who kept the weather data for that area, testifying for the plaintiff, related that there was a thunderstorm "which is always accompanied by wind" the morning of the day in question, and there were reports of damaging winds that afternoon, including a tornado and damages resulting therefrom. The witness reiterated that "usually high wind, erratic" type accompanied a thunderstorm such as that on the morning of April 18. The plaintiff also introduced a clipping from the local newspaper dated April 20, 1978, which related that "early Tuesday morning . . . rain, lighting [sic], hail and high winds struck the area, causing minor damages." This was illustrated by a picture of a large broken tree limb on one of the city streets.

The defendant sought to show that wind was not the contributing factor but instead the water damages occurred as a result of water accumulating on the roof of such weight as to cause the center beam holding the portion of the roof in question to collapse and allow the water to flow into the store. The defendant introduced evidence that, although the roof was sloping, there was a tendency for portions to sag and pollen stains indicated that water tended to pond in the area where the roof collapsed.

In view of the somewhat meager physical evidence respecting the causative force of the roof's collapse and resultant damage to the items of merchandise contained in the building, both sides sought by expert testimony to establish the reason. The expert for the plaintiff who contracted to, and did, repair the roof stated that in his opinion: "The roof collapsed because of an overload and there was no indication to me that it could have been an overload from water and there was nothing else that I could see it could have been from except from wind maybe moved the roof top unit and caused it to collapse." Under a searching cross-examination the witness continued to insist

that there was "no way" that water could have collapsed the building by puddling in sufficient quantities to cause the roof to give way. His statement was that "wind had something to do with it . . . It moved the air conditioning unit in my opinion."

The two expert witnesses for the defendant took a different view. From their examination of the roof, from apparent stains which they opined to be from pollen filled water, and from evidence they felt showed a sag in the roof, they determined that a sufficient amount of water ponded on the roof to overload the beam causing it to crack and allow the air conditioner to fall through the opening. Each of them refused to concede that wind of sufficient velocity was present to knock over the air conditioner. They pointed out the site lacked the usual indicia of wind damage, such as loose or dislocated shingles. One testified that based on his studies of charts of wind velocity, its force and effect on objects, that in order to move the air conditioner a wind velocity of "several hundred miles per hour" would be required; that a hundred miles per hour wind would not supply the necessary pressure.

After the close of the evidence, following argument by counsel and the charge of court, the jury returned a verdict for plaintiff of $19,392.22 plus bad faith damages of 10% and $7,575.00 attorney fees.

In this court, the defendant insurance company enumerates seven grounds of error. *Held:*

1. The seventh enumeration of error is that the trial judge's charge on windstorm was erroneous in that it omitted the material definition of a windstorm as set forth in *Gen. Ins. Co. v. Davis,* 115 Ga. App. 804, 809 (156 SE2d 112).

An examination of the instruction to the jury reveals that the trial judge charged the principles contained in the *Gen. Ins. Co.* case and, furthermore, gave the definition of windstorm as therein contained. This enumeration of error is without merit.

2. The defendant contends that the plaintiff failed to make out a prima facie case since he failed to establish that his loss was one that came within the provisions of the insurance policy. The defendant urges that under the insurance policy it is not liable to the plaintiff for water damage to the plaintiff's merchandise unless the roof collapsed because windstorm directly damaged the roof. It is contended that the plaintiff failed in two particulars: 1) to establish that there was a windstorm and 2) that a windstorm caused the damages.

As to the first point, we do not find the defendant's argument persuasive because there was evidence of wind on the morning in question which caused sufficient damage, — i. e., blowing down a tree and tree limbs — so that it would fall within the definition of

windstorm as defined in the cases which we cited in our prior opinion. See for example *Old Colony Ins. Co. v. Dressel,* 109 Ga. App., 465, 467 (2) (136 SE2d 525) [affirmed in *Old Colony Ins. Co. v. Dressel,* 220 Ga. 354 (138 SE2d 886)]; *Kytle v. Ga. Farm &c. Ins. Co.,* 128 Ga. App. 109, 112 (2) (195 SE2d 787). See also *U. S. Fire Ins. Co. v. Tuck,* 115 Ga. App. 562, 570 (155 SE2d 431).

As to the causation factor, we recognize that the witness for the plaintiff was unable to specifically characterize the force of wind required to damage the roof, however, both sides were quite positive in their demonstrations that there were only two possibilities as to the cause of damage to the roof. Plaintiff's witness was adamant in his assertion that water (the theory the defendant relied on) could not have caused the damage and, therefore, in his opinion the other factor, that is — wind — must have been the causative force. Since the jury was authorized to believe either side's expert witness, *(Cates v. Harris,* 217 Ga. 801, 803 (125 SE2d 649)), there was some evidence sufficient to withstand the defendant's motion for directed verdict.

3. The defendant asserts the trial court erred in refusing to exclude the opinion testimony of William Benefield, the plaintiff's expert witness, as to the causation of the loss because there was insufficient evidence upon which he could predicate his opinion.

There was evidence in the record which would sustain a finding of a windstorm occurring at the time the roof collapsed.

" 'Whether a witness has such learning or experience in a particular art, science, or profession to be treated as an expert, or to be deemed prima facie an expert, is a matter addressed to the sound discretion of the trial court, and such discretion will not be disturbed unless manifestly abused.' " *Oak Ridge Village v. La Siesta Mobile Home,* 130 Ga. App. 539, 540 (1) (203 SE2d 748), and cases therein cited. Accord, *Tenney v. Mobil Oil Corp.,* 133 Ga. App. 631, 633 (2) (211 SE2d 900). An expert witness can express his opinion, "upon proof being made that he was in a position to form an expert opinion, without the necessity of stating the facts forming the basis of his conclusion." *Morgan v. Bell,* 189 Ga. 432, 437 (5 SE2d 897).

"The opinions of experts on any questions of science, skill and trade shall always be admissible, and may be given on the facts as proved by other witnesses and evidence in the record." *Barge v. City of College Park,* 148 Ga. App. 480, 483 (2) (251 SE2d 580). This is true even as to facts not presented prior to the witness' testimony but subsequently thereto. *Nat. Trailer v. Sutton,* 136 Ga. App. 760, 765 (3) (222 SE2d 98).

We find no error in permitting the witness to give his opinion as to the cause of the roof collapsing. See *Forte v. Lewis,* 241 Ga. 109 (3) (243 SE2d 38).

4. In its third ground the defendant enumerates as error the trial judge's submission of the issue of bad faith damages and attorney's fees to the jury. We find this enumeration of error to be meritorious. "Refusal to pay in bad faith means a frivolous and unfounded denial of liability. If there is any reasonable ground for the insurer to contest the claim, there is no bad faith and it is error for the trial court to charge the jury under this Code section that they may return a verdict for penalties and attorney's fees." *Dependable Ins. Co. v. Gibbs,* 218 Ga. 305, 316 (127 SE2d 454). Accord, *John Hancock &c. Ins. Co. v. Poss,* 154 Ga. App. 272, 279 (267 SE2d 877).

We recognize that: "[t]he proper rule is that the judgment [finding bad faith and attorney fees] should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." *Colonial Life &c. Ins. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745). In the case sub judice there is nothing to show bad faith on the part of the insurance company. It is entirely reasonable to defend a claim where there is testimony by expert witnesses that wind could not have been the cause of the damage suffered by the plaintiff and where the issues as to whether a windstorm was shown by proof and whether it was indeed the causative factor of the damages are both extremely close and dependent almost entirely upon interpretation of circumstantial evidence by expert witnesses. Here, after careful examination, we find that, as a matter of law, the defendant insurer had reasonable and probable cause to make the defense which it proffered to the plaintiff's claim. See *Ga. Farm &c. Ins. Co. v. Troupe,* 154 Ga. App. 108, 110 (2) (267 SE2d 834); *Ga. Intl. Life Ins. Co. v. Harden,* 158 Ga. App. 450, 454 (2) (280 SE2d 863).

5. The second enumeration of error is that plaintiff failed to produce evidence sufficient for the jury to calculate compensatory damages. Therefore, the court erred in denying the defendant's motion for directed verdict and motion for new trial.

Without question, an owner is precluded from testifying to the value of his goods in a single or gross amount without giving his reasons therefor or showing that he had an opportunity for forming a correct opinion. *Cunningham v. Hodges,* 150 Ga. App. 827 (258 SE2d 631). Under *Hoard v. Wiley,* 113 Ga. App. 328 (147 SE2d 782), an opinion as to value based solely on cost price is inadmissible in evidence as it has no probative value.

In this case we have the proprietor, with many years experience, of a retail establishment giving his opinion as to the value of the goods damaged based on the wholesale price of items in his inventory which have not yet been sold to the public. The fact that these goods were "new" and that their value was given by one experienced in the sale of

such goods leaves us to the inescapable conclusion that this case is not controlled by *Hoard v. Wiley,* 113 Ga. App. 328, supra, and that instead the evidence offered by the plaintiff was admissible and was therefore sufficient to authorize the verdict found by the jury.

Moreover, as was pointed out in the previous appearance of this case the policy provided for recovery of "the actual cash value of the property at the time of the loss." The evidence here met that standard.

6. The argument is made that the trial court erred in denying the defendant's motion for mistrial based upon one of the jurors failing to properly answer one of the questions propounded by defense counsel during voir dire. The incident which was the basis for this ground arose when defense counsel made a motion after the jury returned following a recess. Counsel stated that the juror "failed to reveal when asked if Mr. Gammon and Mr. Anderson (attorneys for plaintiff) were handling a case for her or were in the process of doing some type of legal service for her." Counsel urged "the basis for the mistrial was that the juror failed to give correct information on voir dire and totally disregarded the court's instructions in the case [as to not communicating with counsel or the parties]."

The counsel for the plaintiff gave the following explanation in response to the motion. "I walked into my waiting room, there were three or four people present, as one group left I noticed Mrs. Beck [the juror] there in the waiting room and she stood to talk with me and I told her that we shouldn't talk and she says 'well, I' . . . I am not handling any case for her and so she did respond truthfully to the question. She did come to see me, oh, three or four months ago, with regard to a dental bill she had received for a partial plate which she said was unusable and obviously recently . . . what she had in her hand was a notice from a collecting agency that the account had been turned over to. She said 'well, I just wanted to give you this.' I took it and looked at it and said 'well, I'll write them a letter' and that was the entire gist of the conversation. Well, the entire conversation. And immediately when she stood up and approached me in the waiting room, as I say, we did not go into my office, I told her that she and I . . . that she was a juror on the case and that we should not converse and she said 'well, didn't even think about that I just wanted to leave this with you.' "

The trial judge, after hearing statements from both counsel, but receiving no evidence from the juror, overruled the motion for mistrial.

The plaintiff has argued vigorously that there is no showing that the juror made an untruthful answer to the question. We see nothing

to indicate that counsel for the plaintiff in any way acted improperly or with impropriety. Obviously, plaintiff's counsel very truthfully did not feel he was employed by the juror. However, it is equally clear that the juror felt that plaintiff's counsel was representing her as she so indicated by first discussing the matter and subsequently turning a collection letter over to plaintiff's counsel. Whether plaintiff's counsel was receiving any money or not, it is very clear that, considering the question posed on voir dire, the juror should and did realize that counsel was in the process of doing some facet of legal service for her.

A very thorough discussion of this type of situation is found in *Glover v. Maddox,* 100 Ga. App. 262, 265 (111 SE2d 164). In that decision it was pointed out that Code Ann. § 59-705 (Ga. L. 1949, p. 1082; 1951, pp. 214, 215) provides that prospective jurors may be examined regarding their "relationship or acquaintance . . . with parties or counsel . . . [and] any fact or circumstance indicating any inclination, leaning or bias which the juror might have respecting the subject matter of the suit, or counsel or parties thereto." It has been held that the failure to respond is tantamount to giving an untruthful answer. *Pierce v. Altman,* 147 Ga. App. 22 (248 SE2d 34). The question of whether or not the defendant showed harm is not controlling. As stated in *Glover v. Maddox,* 100 Ga. App. 262, 266, supra, the party asking the question had the right to the information and the right to make a choice with it. Had counsel for the defendant known of the juror's involvement as to a business matter with counsel for the plaintiff he might very well have exercised a peremptory strike to remove that juror from serving on the trial jury. *Falsetta v. State,* 158 Ga. App. 392 (280 SE2d 411), although a criminal case, points out with great clarity the basis for strict requirements in this area. There is a right to be tried by an impartial juror and our statute protects a party's interest in determining whether there is bias or prejudice on the part of a juror.

In this case from the facts presented, the juror was under an obligation to reveal, in response to counsel's question, that she expected plaintiff's counsel to take action in her behalf on a matter which she had previously discussed with him. Whether it was a formal representation or a favor there was no doubt that she expected counsel to perform a legal service for her by responding to a collection letter. It was error to refuse to grant the defendant's motion for mistrial.

7. We have passed on the sufficiency of the evidence and those issues which we feel might indeed be relevant on a retrial of this case. We have not passed on other matters as to which a motion for mistrial were addressed because they are unlikely to recur on a new trial.

*Judgment reversed. Shulman, C. J., concurs. Carley, J., concurs in Divisions 1, 2, 3, 5, 6, 7, and in the judgment.*

DECIDED JANUARY 4, 1983 —
REHEARING DENIED FEBRUARY 3, 1983 —

*Jack F. Witcher, John W. Kilgo,* for appellant.
*Joseph N. Anderson, Sara Nell Langland,* for appellee.