## 66488. HUDSON PROPERTIES, INC. v. CITIZENS & SOUTHERN NATIONAL BANK.

SHULMAN, Chief Judge.

This appeal involves an action in trover to recover damages for the alleged conversion by defendant/appellant of property named as collateral in a security agreement between plaintiff/appellee and a third person. The jury returned a verdict in favor of appellee. Appellant appeals, claiming that the trial court erred in denying its motion for directed verdict at the conclusion of appellee's evidence and in granting appellee's motion for directed verdict as to the question of conversion. Additionally, appellant asserts that the trial court erroneously allowed impeachment of a defense witness on an allegedly irrelevant issue and allowed the admission of allegedly irrelevant and unduly prejudicial evidence pertaining to the conversion and value of the property in question.

In July of 1978, Dr. Jose B. Namer executed to The C & S Emory Bank (predecessor in interest to appellee) a note in the amount of $35,000 with an accompanying security agreement covering medical equipment used in the doctor's practice and any subsequently acquired equipment used for that reason. At that time, Dr. Namer had an office on Hugh Howell Road in Tucker and one in his home in DeKalb County. In July of 1980, he moved the equipment in his home office to an office owned by appellant in Fairburn, Georgia. Dr. Namer procured a loan from the Fairburn Banking Company to assist in financing his relocation. However, the bank would not issue the loan until appellant agreed to co-sign the note. The Fairburn Bank prepared a security agreement allegedly covering the same equipment that was the collateral in the 1978 security agreement between Dr. Namer and appellee. In September of 1980, Dr. Namer defaulted on the 1978 note and appellee subsequently accelerated the note in reaction thereto. On September 28, 1980, Dr. Namer vacated

his new office and absconded with the equipment. Appellant filed for and received an insurance payment for the missing equipment. Dr. Namer later filed a petition in bankruptcy, and this action in trover was brought against appellant, the co-signer of the 1980 note.

During the trial, the court found as a matter of law that there had been a conversion by appellant when it co-signed the note and security agreement on July 15, 1980. At the conclusion of appellee's evidence, appellant moved for a directed verdict alleging that appellee had failed to carry its burden of proof. Appellant's motion was denied. Appellee thereafter elected to recover the value of the property and compensation for hire. At the close of appellant's case, appellee moved for a directed verdict on the conversion issue requesting that only issues regarding the amount of damages be submitted to the jury. The trial court granted this motion and the jury subsequently returned a verdict of $24,333 in favor of appellee.

1. Appellant contends that the trial court erred in denying his motion for directed verdict because appellee failed to sufficiently establish that it had a security interest in the doctor's equipment. Appellee had introduced into evidence an uncertified copy of the financing statement of the purported transaction between appellee's predecessor in interest and Dr. Namer. The document was not signed by the debtor (Dr. Namer). At trial, counsel for appellant based his objection to the admission of the financing statement on the grounds that it was an uncertified copy, while on appeal it argues that the copy was inadmissible because it was unsigned by the debtor. An objection to the admission or exclusion of evidence must be *specifically* raised at trial in order to be heard on appeal. *Boggs v. Griffeth Bros. Tire Co.,* 125 Ga. App. 304 (7) (187 SE2d 915); *Sutphin v. McDaniel,* 157 Ga. App. 732 (1) (278 SE2d 490). Consequently, appellant has waived appellate review of this objection.

Additionally, appellant argues that appellee failed to establish the value of the property. It is well settled that " '[t]he role of an appellate court is not to pass on the weight of the evidence but the sufficiency.' [Cit.] If there is 'any evidence' to support the verdict we cannot disturb it. [Cits.]" *Gay v. City of Rome,* 157 Ga. App. 368, 370 (277 SE2d 741). A review of the record in the case at bar reveals that the jury had ample evidence on which to base its verdict. This enumeration is therefore without merit.

2. Appellant argues that the trial court erred in granting appellee's motion for directed verdict regarding the issue of conversion since there remained a question of fact as to whether the property secured in the 1980 agreement was the same property named in the 1978 security agreement. We disagree.

The 1978 security agreement stated in pertinent part that Dr.

Namer "... hereby grants to the Secured Party [C & S Bank] security title to and a security interest in, the following property: All equipment of the debtor of every description *used or useful in the conduct of the debtor's business, now or hereafter existing or acquired* affixed thereto or used in connection therewith but not limited to one (1) x-ray machine and items listed in Exhibit 1. The listed assets held for collateral are *presently* located at 4385 Hugh Howell Rd. Tucker, Ga." (Emphasis supplied.) Appellant claims that the trial court's interpretation of the "after-acquired property clause" is too broad since the property secured by the 1980 agreement was located in a different place than the location specified in the 1978 agreement. The after-acquired property clause contained in the security instrument, commonly known as a "floating lien," has been expressly approved in this state by statute and case precedent. OCGA § 11-9-204 (Code Ann. § 109A-9 — 204); *Babson Credit Plan v. Cordele &c. Credit Assn.,* 146 Ga. App. 266 (3) (246 SE2d 354); *Tuftco Sales Corp. v. Garrison Carpet Mills,* 158 Ga. App. 674, 675 (282 SE2d 159). The security agreement included all after-acquired property by Dr. Namer regardless of its location, so long as it was used in the conduct of his business. The reference to the location of the secured property in the 1978 agreement was to facilitate identification of that property, not to limit the attachment of the security interest to only after-acquired property kept at that location. Inasmuch as the property designated as collateral in the 1980 agreement, if not the same property as that specifically designated in the 1978 agreement, was after-acquired property as contemplated by the "dragnet" provision in the 1978 security contract, the trial court did not err in granting appellee's motion for directed verdict.

3. Appellant objects to the impeachment of a defense witness by virtue of the exposure of prior inconsistent testimony made by the witness. Appellant claims that these statements pertained to the conversion issue which was no longer relevant at the time of the impeachment attempt. However, "[a] witness may be impeached on a collateral issue which is indirectly material to the issue in the case. [Cit.]" *Glo-Ann Plastic &c. v. Peak Textiles,* 134 Ga. App. 924, 928 (216 SE2d 715). The prior inconsistent statement reflected on the witness' credibility, which is the absolute right of the jury to determine. OCGA § 24-9-80 (Code Ann. § 38-1805). The allowance of the impeachment of the witness was therefore not error.

Appellant tangentially complains that the trial court erred in issuing the jury a charge regarding the impeachment of a witness. For the foregoing reasons, and the additional fact that appellant failed to object to the charge at trial, this contention is without merit. OCGA § 5-5-24 (Code Ann. § 70-207).

4. Appellant further contends that irrelevant documentary evidence was erroneously admitted into evidence. After careful consideration of the record, we find that the items objected to, the documents evidencing the 1978 and 1980 transactions, and evidence of Dr. Namer's total indebtedness to the bank, were relevant pieces of evidence. The latter's importance stems from the fact that it provided the ceiling for any monetary recovery the appellee could receive. *Rose City Foods v. Bank of Thomas County,* 207 Ga. 477 (62 SE2d 145).

5. Finally, appellant contends that it was error for the trial court to admit evidence concerning the original purchase price of the equipment at the time of the 1978 security agreement, which was two years before the conversion of the equipment took place. OCGA § 44-12-152 (Code Ann. § 107-103) states: "For personalty unlawfully detained, the plaintiff may recover a sum in the amount of the highest value which he is able to prove existed between the time of the conversion and the trial." Evidence regarding the original purchase is relevant for the jury to consider in arriving at their final figure. *Young v. Durham,* 15 Ga. App. 678 (1) (84 SE 165).

*Judgment affirmed. McMurray, P. J., and Birdsong, J., concur.*

DECIDED OCTOBER 6, 1983 —

*Tony H. Hight,* for appellant.
*Casper Rich,* for appellee.