71263. QUEEN et al. v. McDANIEL.
(343 SE2d 783)

BANKE, Chief Judge.

The appellants sued the appellee to recover for personal injuries they allegedly sustained when the appellee attacked them in the checkout line at a grocery store. The appellee counterclaimed to recover some $14,500 he had previously paid to the appellants as reimbursement for their medical expenses. A jury found for the appellee on both the main claim and the counterclaim. On appeal, the appellants contend that the trial court erred in sustaining the appellee's objection to the following medical testimony and in striking the testimony from the record: "DIRECT EXAMINATION BY [appellants' attorney]: Q. Doctor, would you state your full name, please, for the court? A. Richard N. Klaus . . . Q. Dr. Klaus, what type of medical specialty do you have? A. I'm an orthopedic surgeon. Q. And in particular, what is an orthopedic surgeon, just generally what? A. An orthopedic surgeon is a specialist in the practice of medicine who treats and reconstructs injuries to the bone and joints, ligaments and muscles attached with modality such as casting, physical therapy, medicine, sometimes injections, and sometimes surgery. Q. Did you have occasion to treat [appellant] Linda Queen on August 6th, 1980; . . . A. Yes. Q. And what did you treat her for on that date? A. She stated, and I used her quotes, a belligerent intoxicated person ran a grocery cart into her low back and flank which caused exacerbation of her pain. I had been treating her before, since September of 1977, and I had last seen her in March of 1980 prior to this, so that was five months previously, I guess. Q. Did you have occasion prior to August 6th, 1980, to perform a myelogram on Mrs. Queen? A. September 17th, 1979. Q. And was that negative or positive? A. That was normal. It did not show any abnormalities of the discs. Q. Did you have occasion subsequent to August 6th, 1980, to perform surgery on Mrs. Queen? A. . . . I did perform a repeat myelogram on her February 3rd, 1982. I did inject medicine into her spinal canal, next to her spinal canal under x-ray visualization in May of 1982, and those are the two surgical procedures I did perform here after . . . that August of 1980 injury . . . Q. On June 7th of 1982 did you perform anything? A. June 7th, excuse me, of 1982 I did explore for a disc . . . Q. And how long did she remain in the hospital? A. She was operated on the 7th and went home 12 days later, June 19th. Q. And was all the treatment you've rendered her necessary? A. Yes, sir. Q. Is she still presently under your care? A. Yes, sir. And I last saw her September 17th, this

month, this year. [Appellants' attorney]: That's all I would have. [Appellee's attorney]: Your honor, I object to Dr. Klaus's testimony, move it be stricken on the grounds he has not been qualified in any way as an expert in this courtroom. THE COURT: At this point I think your objection is well-taken. [Appellants' attorney]: Your Honor, he was testifying as a treating physician, not as to his expertise. THE COURT: At this point I think the objection is well-taken and I sustain it . . . [Appellee's attorney]: Your honor, I would request the court give a limiting instruction to the jury striking Dr. Klaus's testimony. THE COURT: Yes, sir. It's not admissible. It's been withdrawn from your consideration. You're to not weigh Dr. Klaus's testimony in making your verdict." *Held*:

Generally speaking, nothing more is required to qualify a witness as an expert than to show that, through education, training, or experience, he has special knowledge concerning the matter of science or skill to which his testimony relates. See generally *Tifton Brick &c. Co. v. Meadow*, 92 Ga. App. 328, 330-331 (88 SE2d 569) (1955); *Martin v. Newton*, 129 Ga. App. 735, 736 (201 SE2d 31) (1973).

Dr. Klaus identified himself as a practicing specialist in orthopedic surgery, and the appellee did not undertake by cross-examination or otherwise to suggest that this was an incorrect designation. The only opinion the witness offered during the course of his testimony was to the effect that his treatment of Mrs. Queen had been medically necessary. We find no basis for a determination that the witness was unqualified to offer such an opinion. Accord *Brisendine v. Hunt*, 43 Ga. App. 115 (2), 118-119 (158 SE 469) (1931). Consequently, we hold that the trial court erred in instructing the jury not to consider the doctor's testimony.

*Judgment reversed. Deen, P. J., Birdsong, P. J., Carley, Sognier, Pope, Benham, and Beasley, JJ., concur. Deen, P. J., and Beasley, J., also concur specially. McMurray, P. J., dissents.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent as I would affirm the judgment of the trial court.

For the opinions and conclusions of a witness, which relate to matters that are within the domain of a medical expert, to be received his qualification as an expert must be proved. See *Martin v. Baldwin*, 215 Ga. 293, 297 (110 SE2d 344); *Knudsen v. Duffee-Freeman, Inc.*, 95 Ga. App. 872, 879 (99 SE2d 370). " ' "Whether a witness has such learning or experience in a particular art, science, or profession to be treated as an expert, or to be deemed prima facie an expert, is a matter addressed to the sound discretion of the trial court, and such discretion will not be disturbed unless manifestly abused." ' [Cits.]" *First of Ga. Ins. Co. v. Worthington*, 165 Ga. App. 303, 306 (3) (299

SE2d 567); *Redd v. State*, 240 Ga. 753, 755 (2) (243 SE2d 16).

In the case sub judice, the record supports the trial court's finding that the witness had not been qualified as a medical expert.

In *Southern R. Co. v. Cabe*, 109 Ga. App. 432, 442 (6) (136 SE2d 438), this court held: "Generally, nothing more is required to qualify an expert than that he has been educated in a particular trade or profession. This special knowledge may be derived from experience as well as study. [Cit.]" There is nothing in the record in the case sub judice to demonstrate what training or experience the witness may have had to qualify him to give testimony as to matters within the domain of an expert in the field of medicine. Further, the record shows that the plaintiffs' attorney dismissed the witness, failing to lay a proper foundation, even after being put on notice that such a foundation would be necessary for introduction of the witness' expert testimony. Consequently, *the court did not err in excluding the witness' opinions and conclusions which related to matters that were within the domain of a medical expert.*

Next, the plaintiffs argue that it was error to strike the witness' testimony because he was not giving his opinion as an expert witness but was merely testifying to facts that were within his knowledge as the treating physician.

The witness' testimony concerning facts that were within his knowledge and were not opinions or conclusions which related to matters that were within the domain of a medical expert were admissible at trial. See *Hammond v. State*, 156 Ga. 880 (2) (120 SE 539); *Southern R. Co. v. Cabe*, 109 Ga. App. 432, 443, supra. However, I have closely examined the record and would find that the factual testimony given by the witness was cumulative in nature in that it was repeated by several different sources at trial. Consequently, the exclusion of the witness' factual testimony was harmless in that it is highly unlikely that the testimony excluded would have contributed to the outcome of the verdict. See OCGA § 9-11-61.

Lastly, the plaintiffs argue that the defendant's objection to the witness' testimony was not timely. I do not agree.

The defendant's objection was made prior to cross-examination, while the witness was on the stand. The plaintiffs' attorney had ample opportunity to further examine the witness and lay a proper foundation for the witness' qualification as an expert after the defendant's objection. However, the plaintiffs' attorney dismissed the witness without further examination. Consequently, I would find that the defendant's objection was timely.

BEASLEY, Judge, concurring specially.

I concur.

Dr. Klaus' testimony was not offered as expert opinion. He was

not being asked to give his opinion, as an expert qualified to give an opinion as to whether what someone else did met accepted medical standards, i.e., that degree of care and skill exercised in the medical profession generally. See, e.g., *Landers v. Ga. Baptist Medical Center*, 175 Ga. App. 500 (333 SE2d 884) (1985). He was not even being offered as an expert witness. Such a witness is called for the purpose of assisting the fact finders in specialized matters which they would have no knowledge of in their common lay experience. See *Pilgrim v. Landham*, 63 Ga. App. 451, 454 (11 SE2d 420) (1940). Experts in a particular field, who have been trained and have gained experience in that field, are permitted to give such opinion testimony. OCGA § 24-9-65; *Smith v. State*, 247 Ga. 612 (277 SE2d 678) (1981); *Baker v. State*, 161 Ga. App. 670, 672 (3) (288 SE2d 280) (1982).

But here, Dr. Klaus was the treating physician of a plaintiff who was suing for personal injuries allegedly caused by the defendant. Thus it was critical for her to prove what those injuries were and what damages she sustained as a result. Obviously, the treatment she received after the alleged injury was pertinent. That is what Dr. Klaus was called upon to describe. He was simply asked to tell the jury who he was, what the plaintiff's condition was, what he did about it, and to a certain extent, why.

This is simply not opinion testimony and should not have been stricken, as the court did with all of it, upon the objection stated. See, e.g., *Hawkins v. Greenberg*, 166 Ga. App. 574 (304 SE2d 922) (1983).

As recognized by the majority opinion, the only question soliciting opinion was whether all the treatment he rendered was necessary. That question was not specifically objected to. *Sutphin v. McDaniel*, 157 Ga. App. 732, 733 (1) (278 SE2d 490) (1981); *Hudson Properties v. C & S Nat. Bank*, 168 Ga. App. 331, 332 (1) (308 SE2d 708) (1983); *Benjamin v. State*, 172 Ga. App. 3, 4 (2) (321 SE2d 769) (1984).

Moreover, it is almost superfluous to ask a treating physician if what he did was necessary. Even if that question was objectionable and had been properly objected to, allowing the doctor to inform the jury that what he did was necessary would amount to harmless error.

Finally, in response to the dissent's consideration of the treating physician's testimony as cumulative, it does not appear to be so. The treating physician was the most qualified person to describe the plaintiff's condition and medical treatment. Without this testimony directly describing the injury and the treatment addressed, by the person giving it, the jury may well have found that plaintiff had not proved by a preponderance of the evidence what her damages were.

I am authorized to state that Presiding Judge Deen joins in this special concurrence.

*Philip L. Ruppert*, for appellants.
*Kenneth W. Krontz*, for appellee.