Fitzgerald *vs.* Adams and Youngblood.

No. 83.—Philip Fitzgerald, plaintiff in error, *vs.* Sandford Adams and Bennet Youngblood, defendants.

[1.] The rule requiring the production of the best evidence of which the nature of the case is susceptible, is essential to the true administration of justice.

[2.] The cases which most frequently call for the application of this rule, are those which relate to the substitution of *oral* for *written* evidence.

[3.] In all cases where the law requires that the evidence of the transaction should be in writing, no other proof can be substituted, as long as the writing exists, and is in the power of the party.

[4.] The jurisdiction given to Justices' Courts, is to hear and determine suits by *summons* or *warrant;* and a copy of the process is to be served by the Constable personally on the defendant, or left at his usual and notorious place of abode.

[5.] It is the duty of the Constable to make an entry of service on the summons or warrant, in writing, and sign such return.

[6.] These original documents will be presumed to be preserved and of file in the proper repository for the official papers of the Militia District, until the contrary appears, and no secondary evidence can be allowed, until diligent search has been made for this primary proof.

*Certiorari,* in Fayette Superior Court. Decided by Judge Hill, September Term, 1850.

Philip Fitzgerald obtained nine judgments against the defendants in error, in a Justice's Court in Fayette County, at the April Term, 1842. On the 13th of the same month, *fi. fas.* were issued thereon, which were, in March, 1849, levied on the property of Adams, who filed his affidavits of illegality to said *fi. fas.* on the grounds—

1st. Because he never was summoned to appear and defend said suits, nor had any notice that the same were pending.

2d. Because no original summons were ever issued, nor copies served on him, nor service acknowledged, nor judgment confessed, neither by himself, nor any other person authorized to do so for him.

At the August Term, 1849, of the Justice's Court, a trial was had upon the said affidavits of illegality, when the defendant proposed to prove by Archibald McEachern, that he (witness) was the only Constable acting in the district the year in which the judgments were obtained, and that he did not serve the defendants with any summons in the cases.

To which the plaintiff objected, on the ground that the evidence sought to be submitted was secondary in its character and was inadmissible, until it was shown that the original summons, with the return of the Constable thereon, were lost or were never issued, and, also, because parol evidence was inadmissible to set aside a judgment, and if there was any irregularity, advantage should have been taken of the same at an earlier day. Which objections were overruled by the Court, and the evidence allowed to go to the Jury. The Jury returned a verdict sustaining the affidavits of illegality.

From the decision of the Justices and the verdict of the Jury, a *certiorari* was taken to the Superior Court, upon the hearing of which, Judge *Hill* sustained the decision of the Justices and the Jury, and dismissed the *certiorari*, and counsel for plaintiff excepted.

TIDWELL and FULLER, for plaintiff in error.

CONNER and STONE, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

At the April Term, 1842, of the Justice's Court in and for the 549th Militia District of this State, Philip Fitzgerald recovered nine judgments against Bennet Youngblood and Sandford Adams. On the 30th day of the same month, executions were issued upon these judgments by John Lunmas, a Magistrate of the District. On the 31st day of March, 1849, these *fi. fas.* were levied, by the Constable, on the property of Adams, one of the defendants, who made oath, that the same were proceeding illegally against him, upon the ground that he was never summoned to appear and defend said suits, nor had he any notice of the pendency thereof; that no warrants were ever issued or copies served in the cases, or service acknowledged, or judgments confessed, either by himself or any other person duly authorized by him for this purpose.

On the trial of the illegality, Archibald McEachern was introduced, who testified that he was Constable of the 549th District in 1842, and that he had no recollection of serving Adams with copies of the summonses in these cases; that there were frequently two Constables acting in the district at the same time, but his impression was, that there was but one in 1842.

To this testimony the plaintiff objected, as secondary and inferior—no search having been made for the original papers in the cases; but the objection was overruled, and a verdict rendered for defendant.

A *certiorari* was applied for and obtained, but dismissed upon the hearing, and the decision of the Justice's Court, setting aside the *fi. fas.* sustained. Was the parol proof admissible on the original trial?

[1.] The law requires the production of the best evidence of which the case, in its nature, is susceptible, for the obvious reason, that if this is withheld, it is fair to presume that the party had some sinister motive for not producing it, and that if offered, his design would be frustrated. The rule, say the text books, thus becomes essential to the true administration of justice.

[2.] The cases which most frequently call for the application of this rule, are those which relate to the substitution of oral for written evidence; and these Mr. *Greenleaf* arranges into three classes—including in the first, those instruments which the law requires should be in writing, such as records, public documents, &c.

[3.] In all such cases, the law having required that the evidence of the transaction should be in writing, no other proof can be substituted for that, as long as the writing exists, and is in the power of the party.

Thus, where oaths are required to be taken in open Court, where a record of the oath is made, or before a particular officer whose duty it is to certify it, or where an appointment to an additional office is required to be made and certified on the back of the party's former commission, the written evidence must be produced. *Treatise on Evidence, vol.* 1, §§82, 85, 86.

[4.] By an amendatory Act to the Judiciary, passed in 1811, (*Prince,* 501,) Justices of the Peace are empowered to hear and determine all suits, on any liquidated demand or account not exceeding thirty dollars, by *summons* or *warrant,* a copy of which it is made the duty of the Constable to serve personally on the defendant, or leave at his usual and notorious place of abode.

[5.] And the Statute expressly declares, that "It shall be the duty of the Constable serving *the summons* or warrant, *to make an entry of service thereon, in writing, and sign such return.* Prince,* 502.

[6.] Here, then, is an Act, to wit: the service of these summonses or warrants, which the law requires to be in writing; and the rule, therefore, is imperative, that no secondary proof can be substituted until it is ascertained by the proper search, that these original documents do not exist, or are not in the power of the party. Until the contrary is shown, we are bound to presume that these documents have been preserved, and are of file in the proper repository for the official papers of this Militia District; and until a suitable effort is made to elicit the truth from these primary and original sources of information, it would be dangerous, in the extreme, to permit the solemn judgments of a Court

of competent jurisdiction to be set aside by the vague and uncertain recollection of the Constable.

We are all of the opinion, that the judgment must be reversed, and the *certiorari* sustained.