56095. ATLANTA COMMERCIAL BUILDERS, INC. v. POLINSKY et al.

Banke, Judge.

The appellees, owners of a "western-wear" store, sued the appellant to recover for damage to their inventory which resulted from a fire allegedly caused by the negligence of the appellant's employees. The damaged property (clothing, leather goods, equestrian equipment, and horse feed) was being stored in a rented house next door to a construction site on which the appellant was

general contractor. The appellees charged that a group of block masons employed by the appellant left a warming fire unattended and that a spark from the fire ignited the house. The jury returned a verdict for the appellees; and the appellant filed this appeal, alleging, among other things, that there was no proper evidence from which the value of the property could be determined and that the block masons were independent contractors rather than employees of the appellant. *Held:*

1. The evidence as to value was sufficient to support the verdict. The appellees presented a detailed, itemized statement describing each item of the damaged property and showing its wholesale cost, the total cost being $23,113. Appellee Charles Hamilton testified that he had five years of experience buying and selling such items for the retail trade and that his normal retail markup on the items would have been 40 percent for everything except the feed, on which the markup would have been 15 to 20 percent. He stated that this markup was 5 to 15 percent below that normally charged by his competitors. He further stated that he had received approximately $600 from the sale of those goods which he had been able to salvage from the fire. The jury's verdict of $28,000 fell between the wholesale cost and the retail price as established by the evidence.

"Questions of value are peculiarly for the determination of the jury, where there is any data in the evidence upon which the jury may legitimately exercise their 'own knowledge and ideas'." *Dixon v. Cassels Co.,* 34 Ga. App. 478 (130 SE 75) (1925). The items involved in this case were of a relatively common nature, so that the jury was not limited to consideration of expert opinion testimony in forming its own opinion of the property's market value. See *Atlantic C. L. R. Co. v. Clements,* 92 Ga. App. 451, 455 (88 SE2d 809) (1955); *Hayes v. State,* 139 Ga. App. 316 (1) (228 SE2d 585) (1976). Accordingly, even though the appellees did not offer any opinion evidence as to market value as such, the jury was authorized to make its own assessment from the evidence of both its cost and its retail value. Accord, *Great American Co-Operative Fire Assn. v. Jenkins,* 11 Ga. App. 784 (5) (76 SE 159) (1912).

The failure of the appellees to offer an opinion on the

fair market value of the salvaged goods does not require reversal, either. "[T]he burden of showing a salvage value is upon the defendant." 22 AmJur2d 210, Damages, § 145. The appellants made no effort to show that the $600 received for the salvaged items was inadequate, and there is nothing to indicate that the sales were not bona fide and at arms length. Under these circumstances we hold that the failure to offer testimony as to the market value of the salvaged goods does not invalidate the verdict.

2. The evidence was sufficient to establish the existence of an employer-employee relationship between the appellant and the company of block masons who were found to be responsible for the fire.

"The test to be applied in determining whether the relationship of the parties under a contract for the performance of labor is that of employer and servant, or employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *Fidelity &c. Co. of N. Y. v. Windham,* 209 Ga. 592, 593 (74 SE2d 835) (1953). "Where one is employed generally to perform certain services for another, and there is no specific contract to do a certain piece of work according to specifications for a stipulated sum, it is inferable that the employer has retained the right to control the manner, method, and means of the performance of the contract, and that the employee is not an independent contractor." *Mitchem v. Shearman Concrete Pipe Co.,* 45 Ga. App. 809 (1) (165 SE 889) (1932). See *Moon v. Ga. Power Co.,* 127 Ga. App. 524 (1), 526 (194 SE2d 348) (1972). *Hodges v. Doctors Hospital,* 141 Ga. App. 649, 651 (234 SE2d 116) (1977). See also *Moss v. Central of Ga. R. Co.,* 135 Ga. App. 904, 906 (219 SE2d 593) (1975), citing Restatement of the Law, Agency 2d § 220 (2).

In this case, there was no written contract establishing specifications for the work, but only an oral agreement to pay the masons one dollar per block laid. The appellant's superintendent gave instructions to the head of the mason crew on how the block was to be laid and on one occasion instructed the crew to switch to another

job at another location which was considered more pressing. The masons' boss stated that he was at all times prepared to follow any instructions which the appellant's superintendent might give him concerning how the work was to be done. We hold that this evidence authorized the inference that the block masons were acting as employees of the appellant so as to render the latter liable for their negligence under the doctrine of respondeat superior.

3. For the reasons stated in Divisions 1 and 2, supra, the trial judge did not err in overruling the appellant's motions for directed verdict and for judgment notwithstanding the verdict.

4. The following exchange took place during direct examination of the chief of the block mason crew by counsel for the appellees.

Q: What did Spanhauer [the supervisor for the appellant] tell you about what he wanted you to do? A: Told me he wanted me to pull off and go over there and do [another job] and then come back. Q: Do you remember what your response to him was? A: I told him I would. I mean if he asked me to do it, I'd do it, you know. Q: Why? A: Because, he's my supervisor, you know, superintendent on the job. Q: You'd do what the boss says is what you're saying? A: That's right. Q: It's true you did what Mr. Spanhauer told you — when Mr. Spanhauer told you to pull off and go to Troncalli Motors, you did what the boss said, isn't that right correct? A: If they asked me to pull off and go to a job and I work on that job, I'll go do it, yes, sir.

Objection was made to the last two questions on the ground that they were leading. In view of the immediately preceding testimony, any error in overruling the objection was harmless.

5. The enumerations of error going to the jury charge cannot be considered due to the appellant's failure to make timely objections to the charge at trial, "stating distinctly the matter to which he objects and the grounds of his objection . . ." Code Ann. § 70-207 (a). See *Harper v. Ga. Southern & Fla. R. Co.,* 140 Ga. App. 802 (232 SE2d 118) (1976).

*Judgment affirmed. Deen, P. J., and Smith, J.,*

*concur.*

ARGUED JUNE 28, 1978 — DECIDED SEPTEMBER 5, 1978 —
REHEARING DENIED NOVEMBER 22, 1978.

*Henning, Chambers & Mabry, Peter K. Kintz,* for appellant.

*Adair, Goldthwaite & Daniel, Michael J. Reily,* for appellees.