## 61616. LOETHEN v. THE STATE.

BANKE, Judge.
Evidently feeling out of sorts, the appellant slashed the tire of a Coca-Cola truck, stabbed a police officer who attempted to question

him about the incident, and later, after being transported to jail, set fire to the mattress in his cell. He was indicted for aggravated assault on a police officer, criminal damage to property in the first degree (for setting fire to the bunk), criminal damage to property in the second degree (for slashing the tire), and theft by entering an automobile (for entering a parked automobile while being pursued for the tire slashing). Rejecting his special and general pleas of insanity, a jury found him guilty of the aggravated assault charges and the two criminal damage to property charges, but acquitted him of the theft charge. He appeals only the two convictions for criminal damage to property. As to the conviction for criminal damage in the second degree, he contends that there was no evidence to support the allegation that he caused more than $100 damage to the tire. See Code Ann. § 26-1502 (a). As to the conviction for criminal damage in the first degree, he contends that there was no evidence to support the allegation that he set fire to the bunk "in a manner so as to endanger human life," see Code Ann. § 26-1501 (a). *Held:*

1. The only evidence offered with respect to the amount of damage to the tire was the following testimony from the driver of the truck: "Q: Now the truck tire (sic) on these route trucks, are they 10-by-20 truck tires? A: Right. Q: And do they have a value greater than $100? A: Yes, sir . . . Q: Was the tire replaced? A: It has been replaced since. Q: And it's your testimony that the puncture, small hole, as you testified, couldn't have been patched? A: It was a radial tire. I don't know whether it could have been patched or not. It might could. It was in the sidewall, and that's the reason we replaced it."

This testimony provides no basis for a conclusion that the damage to the tire exceeded $100. In fact, it does not even constitute competent evidence that the tire was worth more than $100 before it was damaged, for in order to express a competent opinion as to the value of an item, a non-expert must show that he has sufficient information upon which to base such an opinion. See generally Code § 38-1709; *Southern Cotton Oil Co. v. Overby,* 136 Ga. 69, 72 (70 SE 664) (1911); *Crump v. Knox,* 18 Ga. App. 437 (3) (89 SE 586) (1916). Because the driver did not testify that he had any training, experience, or special knowledge which would qualify him as an expert in the market for truck tires and because he did not state any reasons for his opinion as to the tire's value, the opinion had no probative value. See *Hoard v. Wiley,* 113 Ga. App. 328 (1, 2) (147 SE2d 782) (1966); *Smith v. Gen. Fin. Corp.,* 143 Ga. App. 390 (1) (238 SE2d 694) (1977). Accord, *Crowley v. State,* 141 Ga. App. 867 (234 SE2d 700) (1977). Nor were the jurors provided any information upon which they might have formed their own opinion about the

value of the tire, such as its cost, age, and condition. Compare *Hayes v. State,* 139 Ga. App. 316 (228 SE2d 585) (1976); *Yarber v. State,* 144 Ga. App. 781 (242 SE2d 372) (1978). Accord, *Atlanta Comm. Bldrs., Inc. v. Polinsky,* 148 Ga. App. 181 (1) (250 SE2d 781) (1978). Thus, even assuming *arguendo* that the tire had no salvage value, there was no competent evidence to support the charge that the damage exceeded $100. The conviction of criminal damage to property in the second degree is accordingly reversed.

2. The conviction for criminal damage to property in the first degree is similarly reversed for lack of evidence. The indictment alleges that the appellant set fire to his mattress "in a manner so as to endanger human life," thus charging an offense under Code Ann. § 26-1501 (a). However, the state's evidence revealed that the mattress was made of a non-flammable substance, that the smoke from it did not burn the eyes or cause coughing, and that the fire did not have the potential for spreading. Thus, since no other prisoners were quartered in the appellant's cell, it is clear that the only person who was in any actual danger was the appellant himself, and he was threatened not by the "burning" mattress but because he simultaneously set fire to his hair and clothes.

The state contends that because Code Ann. § 26-1501 (a) proscribes interference with property in a manner which endangers "human life" rather than in a manner which endangers "other lives," the Legislature clearly intended to include within the ambit of the statute persons who seek their own destruction or engage in self-mutilation in a manner which interferes with private property. However, given the extreme unlikelihood that anyone bent on such a course would be deterred by the prospect of criminal sanctions for the damage he or she might cause to property in the process, we reject this interpretation.

*The convictions for criminal damage to property in the first degree and criminal damage to property in the second degree are reversed. The conviction for aggravated assault upon a police officer is affirmed. McMurray, P. J., Shulman, P. J., Carley, Sognier and Pope, JJ., concur. Quillian, C. J., and Birdsong, J., concur in the judgment only. Deen, P. J., dissents.*

DECIDED MAY 5, 1981 —

*Nick M. Bajalia,* for appellant.
*Lamar Cole, District Attorney, Richard W. Shelton, Assistant District Attorney,* for appellee.

DEEN, Presiding Judge, dissenting.

The convictions obtained in the trial court should be affirmed for two reasons:

1. "In a manner so as to endanger human life," Code Ann. § 26-1501 (a), in my opinion, includes all "human life" including that of the appellant. If the legislature had intended exclusion, restriction or limitation as applicable only to "some humans," they clearly would have chosen the words "other human lives." Appellant's argument that since suicide and attempted suicide are not illegal he cannot be convicted of an offense which tends only to endanger his own life has no merit. The same arguments could be made as to euthanasia, infanticide and abortion, although the latter is illegal under certain conditions. This state affirmatively has expressed an overriding and compelling interest, if not a public policy, in the preservation of all human life. "The Court finds that the State has an interest in the life of this unborn, *living human being.*" (Emphasis supplied.) *Jefferson v. Griffin &c. Hosp. Authority,* 247 Ga. 86, 89 (274 SE2d 457) (1981). Compare also "The ruling of the majority in this case extends that ruling to allow the child to maintain a suit for damages to the cell from which it came, even though the cell had been *conceived ten seconds."* (Emphasis supplied.) *Hornbuckle v. Plantation Pipe Line Co.,* 212 Ga. 504, 505 (93 SE2d 727) (1956). I would affirm the trial court's ruling on the motions as his interpretation in this regard is correct.

2. The sales manager, agent and truck driver of one of the "route trucks" of his company was in charge of the truck and punctured tire. His knowledge and experience was demonstrated by his testimony. He knew the tire was a "big one" 10 x 20 radial truck tire, that it was a sidewall puncture not in the tread and that it was replaced, not repaired, which all indicated knowledge and experience providing an opportunity for forming a correct opinion that it had a value greater than $100.00. This is coupled with the fact that automobiles and tires are mostly everyday objects that enable jurors to use their own knowledge and draw from their own experiences in estimating market value. *Yarber v. State,* 144 Ga. App. 781 (242 SE2d 372) (1978).

I respectfully dissent and would affirm.