## A03A1949. CHAMPION v. DODSON et al.
(587 SE2d 402)

ELDRIDGE, Judge.

Walter Champion, Jr. appealed the denial of his motion for directed verdict on the issue of furniture, equipment, and inventory damages from total loss by fire, which led to a $77,033.06 verdict for Donna Dodson, individually, and d/b/a Catoosa Industrial Supply. Dodson sued Champion for failure to maintain the warehouse in a safe condition and for failure to have an adequate fire wall, causing the warehouse where she was a co-tenant to be totally burned when Walter Champion Company's employee intentionally set the premises occupied by Dodson and by Walter Champion Company on fire to hide the employee's embezzlement. Dodson sought damages for the destruction of the furniture, equipment, and inventory. Dodson failed to offer any evidence of the value of the furniture and equipment immediately prior to fire; however, she did provide some evidence as to the inventory value. Thus, some categories of damages were not proven, i.e., furniture and equipment, while inventory damages were proven, but the jury returned a lump sum verdict without distinguishing between the categories of damages. Finding error in the failure to grant a partial directed verdict as to damages for the furniture and equipment and being unable to separate the damage ver-

dict, we reverse the damage award for a new trial on the issue of damages only leaving the verdict for liability unappealed.

Champion contends that the trial court erred in denying his motion for directed verdict on damages, because there was no evidence to establish the fair market value of the inventory, furniture, and equipment Dodson claimed to have lost. See *Hagin v. Powers*, 140 Ga. App. 300, 305 (3) (231 SE2d 780) (1976). As to equipment and furniture, we agree but find that, as to the other damages, the motion was properly denied.

Where tangible personal property has been damaged or destroyed, the plaintiff has the burden of furnishing evidence sufficient to enable the jury to calculate the amount of damages with reasonable certainty without speculation. *Day v. Piedmont Hotel*, 96 Ga. App. 215, 217-218 (2) (99 SE2d 513) (1957) (loss of earnings and commissions). Evidence of the retail purchase price of property alone is not sufficient to establish the fair market value of the property at the time of the loss, because the age and condition of the property, the fair market value at the time of loss, the condition immediately after the loss, and the fair market value immediately after the loss must be proven to establish the damages. See *Portland Forest Products v. Garland Lumber Sales*, 199 Ga. App. 479, 480 (1) (405 SE2d 307) (1991) (affirmed grant of directed verdict for damages for lumber which could change in condition, which could affect value between purchase and destruction, and could not have been established as to fair market value from the purchase price);[1] *Messmore v. Roth*, 185 Ga. App. 862 (1) (366 SE2d 318) (1988) (household goods and furniture, which were not new, fair market value prior to loss shown by the retail purchase price and condition at the time of total loss); *Minit Chek Food Stores v. Plaza Capital*, 135 Ga. App. 110, 111 (3) (217 SE2d 415) (1975) (a sign which had become used could not have its fair market value proved by the retail purchase price alone). For a used motor vehicle or other similar mechanical equipment, which depreciates with age, care, condition, and use, the retail purchase price alone is insufficient to prove damages, because the fair market value immediately prior to the loss will differ from the retail purchase price from depreciation alone. See *Adams Refrigerated Express v. Ingol*, 176 Ga. App. 457, 458 (1) (336 SE2d 289) (1985) (tractor-trailer used for hire).

---

[1] Lumber is a commodity in which wholesale value can vary for its type, grade, condition, and market supply; its condition can deteriorate changing its value. Therefore, the fair market value immediately prior to the loss must be proven. See *Portland Forest Products v. Garland Lumber Sales*, supra at 480. However, it is distinguishable from the facts and law in this case. See *Empire Shoe Co. v. NICO Indus.*, 197 Ga. App. 411, 415 (3) (398 SE2d 440) (1990); *First of Ga. Ins. Co. v. Worthington*, 165 Ga. App. 303, 307-308 (5) (299 SE2d 567) (1983).

> An opinion as to value based solely on cost price is inadmissible in evidence as it has no probative value. . . . Merely listing the damaged items, along with a monetary figure estimating replacement cost based entirely upon the original purchase price . . . is not sufficient evidence to establish damages under the law, as the cost of property alone is insufficient proof of market value. If coupled properly with other evidence such as a showing of the condition of the item both at the time of purchase and at the time its value is in issue, the cost price of an item may be admitted as an *element* upon which an opinion may be formed as to the item's value.

(Citations and punctuation omitted; emphasis in original.) *Cunningham v. Hodges*, 150 Ga. App. 827 (1) (258 SE2d 631) (1979) (directed verdict proper as to damages to furniture and household goods destroyed in a fire), disapproved, *Braner v. Southern Trust Ins. Co.*, 255 Ga. 117, 121 (3) (335 SE2d 547) (1985) ("We find this rule to be too stringent [where a homeowner or homeowner's spouse testifies as to either the purchase price or replacement cost of household furnishings] and others similar to it for several practical reasons.").

> An owner of property may not testify as to his opinion of the value of the property in a single or gross amount without "giving his reasons therefor" or else showing that he has had "an opportunity for forming a correct opinion."

*Hoard v. Wiley*, 113 Ga. App. 328, 329, hn. 1 (b), 334 (3) (147 SE2d 782) (1966) (fair market value of beer and wine cannot be determined from purchase price alone but may be an element when coupled with other evidence such as condition at the time of purchase and loss), disapproved, *Braner v. Southern Trust Ins. Co.*, supra at 121; see also *Hagin v. Powers*, supra at 304 (household property destroyed by fire showing purchase price, some acquisition dates, some salvage values, and before and after value in a gross amount).

Where evidence shows that the tangible personal property held for resale did not change in condition between the time of wholesale purchase and the loss, the jury may infer that the fair market wholesale value immediately prior to the loss and the wholesale purchase price were the same, because a rebuttable presumption arises of continuing condition.[2] See generally *Atlanta Commercial Builders v.*

---

[2] There is a rational basis for treating wholesale inventory property damages for hardware differently from general tangible property damages after retail sale, which property is either held for consumer, commercial, or industrial use. Generally, hardware inventory is

*Polinsky*, 148 Ga. App. 181, 182-183 (250 SE2d 781) (1978) (the inventory of a western-wear store destroyed in a fire was proven by the owner's testimony only from inventory records and wholesale costs without a specific showing of the fair market value immediately prior to the fire). While such inventory in an unchanged condition could appreciate between purchase and the loss, such appreciation over the wholesale purchase price must be established by competent evidence if more than the wholesale purchase price is to be recovered. Id.[3] If any of the inventory depreciated in value prior to the loss, then the defendant has the burden of proof as to such diminished value from the purchase price. Id. at 181. Since inventory was held for resale in the same condition as it was at the time of wholesale purchase, then the jury may infer that the retail fair market value will exceed the wholesale purchase price and that the fair market value at wholesale remains the same as the wholesale cost, because inventory continues in the same condition and has a markup for overhead and profit; in some extraordinary circumstances, the inven-

---

kept or protected in presale packaging or other inventory control of climate, moisture, heat, pests, or other factors that can cause the loss in value through deterioration in a warehouse or similar retail storage area until sale. The retail business protects from change its inventory to keep the items merchantable and avoid injury, causing loss of value. Change in inventory value comes from increase of replacement costs through inflation, rarely deflation, or from decrease from change in model through style change or technology. In contrast, pharmaceuticals and foodstuffs have a finite shelf life which would cause a decrease in value until the inventory has only a salvage value. Some building materials such as lumber, sheetrock, plywood, or particle board can change in condition from handling, heat, or moisture so that the value changes. After retail sale, all retail items change in condition and value. After retail sale, different tangible property owners will use, store, care for, or expose to the environment such property in different ways so that the condition will vary from owner to owner. Further, when put in use, the property ages and depreciates in value with time and use. Therefore, the fair market value immediately prior to loss must be proven or sufficient evidence given to the jury from which it can reasonably determine the fair market value at the time of loss for common items of use within their experience and knowledge. See *Atlanta Commercial Builders v. Polinsky*, 148 Ga. App. 181, 182-183 (1) (250 SE2d 781) (1978). See also *Empire Shoe Co. v. NICO Indus.*, supra; *First of Ga. Ins. Co. v. Worthington*, supra.

[3] If a retailer, wholesaler, or manufacturer, who has suffered a loss from the destruction of inventory, wants to recover the reasonable expected markup that is represented by the sale price of the lost inventory, then such party must meet the evidentiary burden of proof necessary to permit the recovery of lost profits. Generally, the loss of profits is too uncertain and speculative for recovery, unless the business has sufficient operations history over time to show the annual business cycles with revenue history and can show the operating overhead costs of doing business in addition to the wholesale cost of the item as annual costs when lost profits may be permitted. If such average annual costs and revenue can be shown with reasonable certainty, then the lost profits can be determined from historic revenue levels, less historic costs of doing business. If there is insufficient history of revenue and costs to permit a recovery for lost profits, then any recovery is limited to damages for the lost inventory. See as to proof of lost profits *Kitchens v. Lowe*, 139 Ga. App. 526, 529-530 (3) (228 SE2d 923) (1976); see also *Ga. Grain Growers Assn. v. Craven*, 95 Ga. App. 741, 747 (2) (98 SE2d 633) (1957); *Norris v. Pig'n Whistle Sandwich Shop*, 79 Ga. App. 369, 372-373 (1) (53 SE2d 718) (1949).

tory may be sold at a loss.[4] Absent evidence of an established business over sufficient time to show revenue and overhead operating costs with reasonable certainty establishing historic profits, the fair market retail price of inventory cannot be recovered, because profits are generally too speculative. Id. See also *Empire Shoe Co. v. NICO Indus.*, 197 Ga. App. 411, 413-414 (2) (398 SE2d 440) (1990). However, in this case, the retailer did not seek lost profits but only for the loss of inventory.

> The items involved in this case were of a relatively common nature, so that the jury was not limited to consideration of expert opinion testimony in forming its own opinion of the property's market value. Accordingly, even though the appellees did not offer any opinion evidence as to market value as such, the jury was authorized to make its own assessment from the evidence of both its cost and its retail value.

(Citations omitted.) *Atlanta Commercial Builders v. Polinsky*, supra at 182 (1). Thus, the wholesale fair market value of the inventory was the recoverable damages.

> The evidence as to value was sufficient to support the verdict. The appellees presented a detailed, itemized statement describing each item of the damaged property and showing its wholesale cost, the total cost being $23,113. Appellee . . . testified that he had five years of experience buying and selling such items for the retail trade and that his normal retail markup on the items would have been 40 percent for everything except the feed, on which the markup would have been 15 to 20 percent. He stated that this markup was 5 to 15 percent below that normally charged by his competitors. He further stated that he had received approximately $600 from the sale of those goods which he had been able to salvage from the fire. The jury's verdict of $28,000 fell between the wholesale cost and the retail price as established by the evidence.

Id. at 182.

Thus, "[t]he items involved in this case were of a relatively com-

---

[4] "[V]alue, just as any other matter of proof, may be shown circumstantially or inferentially, as well as directly or positively." (Citations omitted.) *Buntin v. State*, 117 Ga. App. 813 (1) (162 SE2d 234) (1968). "The market value of an automobile may be shown, as are other facts, by direct or circumstantial evidence." *Atlantic Coast Line R. Co. v. Clements*, 92 Ga. App. 451, hn. 2 (88 SE2d 809) (1955).

mon nature, so that the jury was not limited to consideration of expert opinion testimony in forming its own opinion of the property's market value." *Atlanta Commercial Builders v. Polinsky*, supra at 182. See also *Braner v. Southern Trust Ins. Co.*, supra at 120-121 (3) (fire insurance loss of household items supported by purchase price and evidence of condition); *Messmore v. Roth*, supra at 862.

> Ordinarily, a jury is authorized to make a finding as to market value based on the purchase price, the recentness of the purchase, the care given between the purchase and the loss, etc.; however, such principle applies only where there has been no more than ordinary or average wear and tear on the automobile. Purchase price standing alone is not sufficient to establish market value.

(Citations and punctuation omitted.) *Adams Refrigerated Express v. Ingol*, supra at 458.

> As to everyday objects, such as automobiles, the jurors may draw from their own experience in forming estimates of market value. As to items of a common nature, the plaintiff need not offer any opinion evidence as to value and so long as the evidence contains facts upon which the jury may legitimately exercise their own knowledge and ideas, the question of value is properly left to the jury.

(Citations and punctuation omitted.) *White v. Miller*, 194 Ga. App. 816, 817 (3) (392 SE2d 30) (1990) (evidence sufficient of the retail purchase price of the car, age, mileage, equipment, and condition); see also *Atlanta Commercial Builders v. Polinsky*, supra at 181, 182 (1); *Atlantic Coast Line R. Co. v. Clements*, 92 Ga. App. 451, 455 (88 SE2d 809) (1955) (retail purchase price of car is prima facie but not conclusive but would be with evidence of condition).

In this case, Dodson testified that she had been in the business of industrial supply sales for many years; that she had purchased at wholesale and sold at retail to the industry; and that her inventory consisted of hardware or industrial supplies, such as fasteners, nuts, bolts, lag bolts, carriage bolts, machine screws, machine parts, solenoid valves, safety supplies, drills, saws, lock sets, etc., which were kept safely and securely in the warehouse prior to resale, because any deterioration or damage made such items unsaleable to industrial users. Dodson testified that she kept her inventory on shelves in the warehouse behind her office and a small quantity in her office. Dodson proved the wholesale purchase price of the inventory as $90,624.14 and how the inventory had been kept; however, she did not specifically prove the dates of purchase or individually specify

the condition immediately prior to the fire other than it had been kept in the ordinary course of business. She did testify that the value of her lost inventory was $90,624.14 without stating that this was her opinion or that this was the fair market wholesale value immediately prior to the fire, because this was her wholesale cost. The jury could infer from her testimony that from her experience and opportunity to know her inventory that this was her opinion of the wholesale fair market value without using the words "her opinion of the fair market value at the time of loss." Further, Dodson testified that, immediately after the fire, the equipment and inventory had no value, because none of it could be salvaged and sold after enduring the heat of the fire or water damage and that any change in condition to fasteners prohibited their resale. Thus, the jury could reasonably infer that the inventory of the hardware remained unchanged from the wholesale purchase until the fire, because Dodson still had it for resale, implying no change from its wholesale purchase condition or price. Thus, both the condition of the inventory and the wholesale fair market value could be inferred by the jury to remain the same as it had been at the wholesale purchase. Dodson established what she had in inventory and what she had previously sold from vendors' and customers' purchase orders. Dodson testified that the various inventory items could not be replaced for resale after the fire at the original wholesale purchase cost, because the various inventory items increased in price several times each year. But, she was unable to show such appreciation in value for each item; such evidence was sufficient to show that the inventory did not depreciate in value. Dodson sought to recover not the retail fair market value for her inventory loss, which included her markup for overhead and profit and for her inventory loss but only the wholesale fair market value. The jury had sufficient evidence to calculate the damages and to return a verdict without speculation; the verdict was for less than the fair wholesale market value of the inventory, furniture, and equipment shown by the evidence.[5]

As to her office furniture and equipment loss of $12,500, Dodson testified only as to either the purchase price or the replacement cost without giving the date of purchase, the depreciation through use and time, the condition at the time of the fire, and the fair market value immediately prior to the fire of such used items. In contrast,

---

[5] Under the unique facts of this case of retail sales inventory of hardware and the nature of the inventory, both as to common items and as to hardware in an unchanged condition, the general requirement that the fair market value at the time of loss must be proven is not required, because the jury can either determine such value from their common experience or infer that the fair market value continued unchanged from the wholesale purchase price. See *Atlantic Coast Line R. Co. v. Clements*, supra; *Atlanta Commercial Builders v. Polinsky*, supra at 182-183.

the inventory was hardware, such as nails, screws, fittings, etc., which does not deteriorate with time nor change in fair market value from the date of purchase; thus, the jury could reasonably infer that the condition of the inventory remained the same but could not determine the equipment and furniture fair market value.

*Judgment reversed as to damages only and case remanded with directions. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 18, 2003.

*Drew, Eckl & Farnham, Paul W. Burke*, for appellant.
*Horton, Maddox & Anderson, Michael A. Anderson*, for appellees.