A04A1644. HODGES v. VARA et al.
(603 SE2d 327)

ELDRIDGE, Judge.

Ralph Hodges d/b/a Industrial Marine Diesel rented the space above his repair shop to John Vara and I. J. Lee, Inc. with an indemnification agreement. The rented room caught fire through the alleged negligent acts of a social guest of Vara's employee, and the sprinkler system allegedly negligently flooded Hodges' shop, offices, and his spare-parts storage area, damaging his spare-parts inventory. Vara and his corporation installed and maintained the sprinkler

system. Hodges sued Vara and I. J. Lee, Inc. After the jury trial, the trial court directed the verdict against Hodges on damages, because the trial court ruled erroneously that he had not proven his inventory costs. Finding this error, we reverse.

Hodges operated a one-person marine diesel repair shop and had no computer or record keeping system, only paper records and invoices kept on the premises. Hodges' parts inventory was created between 1983 and 2001 and was evidenced by records that were destroyed from water damage in the fire, along with the parts. Hodges was able to salvage $52,000 in parts, which were cleaned and restored to a usable condition and were not part of the damages sought. Hodges had 45 years experience in buying and selling diesel parts made by Caterpillar, Detroit Diesel, General Motors, Isuzu, and Perkins and was familiar with prices in the industry for the sales of parts and the discounts given to dealers.

At the time of the fire on February 23, 2001, Hodges was a parts dealer and distributor for W. W. Williams Detroit Diesel. On February 23, 2001, Ricky Toone, Outside Sales Manager for Williams, inspected the water damaged parts and prepared inventories, which inventories were introduced at trial. Since 1988, Toone called on Hodges monthly to inspect his parts inventory and facility to ensure that Hodges met Williams' dealership standards. Toone had inspected Hodges' parts room within one to two months prior to the fire, and testified that the parts in question were new parts, packaged in original boxes, cellophane, and plastic with the original Detroit Diesel logo on each item. For factory warranty purposes and to comply with dealership requirements, Hodges maintained his inventory of parts in new condition and was never in violation of any dealership requirements.

After the fire, Williams terminated Hodges' dealership, because there was a lack of parts sales. Thereafter, Hodges had to pay the over-the-counter price for Williams' parts, because he no longer received the dealer's discount.

Toone testified that the dealer's discount for parts purchased would have ranged between ten percent and a maximum of twenty-five percent of the items listed on the inventory in evidence. Rebuilt parts on the inventory were given a ten percent to fifteen percent discount in value by Toone. Toone testified that some parts could be salvaged while other parts could not be salvaged; therefore, he could not place a value on the damaged but unsalvaged property. Toone did not include sales tax in his estimated fair market value. Toone testified that all of the damaged property on the inventories placed in evidence were either new or had been rebuilt with factory warranties. Toone demonstrated for the jury parts on the inventory, showing the damage and evidence that the parts were new.

Hodges testified that all but three invoices of his records had been destroyed in the fire and that the inventory cost could not be reconstructed from Williams' records, because over the last ten years parts numbers had been changed six times. Hodges testified as to the salvage value of the parts on the inventories, the fair market value of the lost or damaged parts, and the loss of his records. He verified that all of the parts on Toone's inventories were either new or rebuilt. Hodges testified that there was nothing which would have caused the loss in value of the new parts prior to the fire, because he kept the inventory in a safe condition. The new and rebuilt parts were safely stored on six large shelves approximately eight feet high and fifteen feet long. Hodges testified that the largest dealer's discount that Williams gave him was ten percent off the retail price. Hodges did find three invoices for some parts purchased from Williams with a dealer discount of fifteen percent; all of the rest of the invoices were destroyed in the fire. Hodges gave his opinion that the damaged parts had a fair market value of $111,900, which was arrived at by subtracting the 15 percent dealer discount from the fair market retail value of $131,647.05. Prior to the loss, Hodges could have sold the inventory to other dealers or back to Williams at a discount of 15 percent from the retail price. Of the damaged parts, Hodges gave the opinion that they had a salvage value of $2,500 and that he had been offered such amount.

For a few new parts, Hodges could identify the approximate purchase price from memory. He paid $6,000 each for three planetary assemblies, totaling $18,000. Toone testified that the fair market value of each of these planetary assemblies at the time of trial was then $9,000. Hodges paid Williams $3,200 each for seven blowers totaling $22,400.

For ten years Toone had worked as a diesel mechanic and shop foreman. Toone worked for five years as service manager for Williams. As an expert witness, Toone testified that the fair market value for the damaged parts was $131,647.05.

Since the parts had been purchased over an eighteen-year period, the parts numbers, prices, and dealer's discounts had changed frequently; in ten years, there had been as many as six changes in such figures. The Williams' parts book contained over 30,000 items; therefore, Hodges could not tell from memory most prices. Hodges could not identify most purchase dates, prices, or dealer discounts.

At the close of all of the evidence, the trial court erroneously directed the verdict on the issue of damages. The trial court ruled that Hodges could not produce sufficient evidence of his original cost for the damaged parts, his exact dealer discount, and the fair market value of the parts as of the trial date and that had Hodges proven the

loss of his business records, preventing proof of the original purchase price, the case would have gone to the jury.

1. Hodges contends that the trial court erred in directing a verdict on the issue of damages. We agree.

(a) A motion for directed verdict should not be granted where there exists even slight material issues of fact, because the trial court is substituting its judgment for the jury's; only when there is an absence of evidence or when no evidence supports an essential element of the case should a directed verdict be granted, because the trial judge takes the determination of the facts from the jury. OCGA § 9-11-50; *Johnson v. Curenton*, 127 Ga. App. 687, 688 (195 SE2d 279) (1972). The appellate review of directed verdicts is based upon the "any evidence" rule to support the case of the nonmoving party; when there is "any evidence," a directed verdict must be reversed. *Armech Svc. Co. v. Rose Elec. Co.*, 192 Ga. App. 829, 831 (2) (386 SE2d 709) (1989). "The direction of a verdict is proper only where there is no conflict in the evidence as to any material issue[,] and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation omitted.) *Piedmont Engineering & Constr. Corp. v. Amps Elec. Co.*, 162 Ga. App. 564, 568 (5) (292 SE2d 411) (1982). When there is opinion evidence, circumstantial evidence, presumptions of fact, or evidence subject to more than one reasonable construction, the appellate courts shall carefully scrutinize the grant of a directed verdict, because such evidence may be construed as providing the "any evidence" creating a jury question. *Adamson Co. v. Owens-Illinois Dev. Corp.*, 168 Ga. App. 654, 658 (309 SE2d 913) (1983) (issue of value for trier of facts); *Lingo v. Kirby*, 142 Ga. App. 278, 279 (236 SE2d 26) (1977) (directed verdict on damages).

(b) "Where tangible personal property has been damaged or destroyed, the plaintiff has the burden of furnishing evidence sufficient to enable the jury to calculate the amount of damages with reasonable certainty." (Citation omitted.) *Champion v. Dodson*, 263 Ga. App. 286, 287 (587 SE2d 402) (2003) (loss of hardware inventory unchanged from purchase). We held in *Champion v. Dodson* that proof of the inventory cost and of nothing to change such value from the date of purchase is another of many ways to prove the fair market value of the property damaged or lost at the time immediately prior to loss. Id. The measure of damages for loss of tangible personal property is the difference between the fair market value of the property immediately prior to the damage and immediately after the damage. *Portland Forest Products v. Garland Lumber Sales*, 199 Ga. App. 479 (405 SE2d 307) (1991) (directed verdict proper where lumber could deteriorate in condition, changing its value after purchase); *Atlanta Furniture Co. v. Walker*, 51 Ga. App. 781 (2) (181 SE 498) (1935) (damage to a vehicle); *Douglas v. Prescott*, 31 Ga. App. 684

(1) (121 SE 689) (1924) (same). In determining fair market value of personal property as inventory for resale, a number of factors must be considered when accompanied by the testimony of retailers experienced in sale of such goods: the condition of the property immediately prior to damage; condition following the damage; itemized inventory of lost or damaged property; retail fair market value at the time of damage; the wholesale fair market value at the time of the loss or alternatively, the wholesale cost to the purchaser; and salvage fair market value after the loss. *Portland Forest Products v. Garland Lumber Sales*, supra at 479 (inventory subject to change or deterioration); *Empire Shoe Co. v. NICO Indus.*, 197 Ga. App. 411 (398 SE2d 440) (1990) (new inventory in the original boxes); *First of Ga. Ins. Co. v. Worthington*, 165 Ga. App. 303, 307 (5) (299 SE2d 567) (1983) (new unchanged inventory). Fair market value may be proven by direct and circumstantial evidence, from which reasonable inferences may be drawn as to the appropriate value, and through primary or secondary evidence; the relevancy, weight, and effect of such evidence is for the jury to determine. *Kemira, Inc. v. Williams Investigative & Security Svcs.*, 215 Ga. App. 194, 197 (1) (450 SE2d 427) (1994); *Atlantic Coast Line R. Co. v. Clements*, 92 Ga. App. 451, 455 (2) (88 SE2d 809) (1955). Where the original purchase price could only be estimated but not be reconstructed, slight, any, or some evidence of fair market value will require the denial of a directed verdict. *Hagin v. Powers*, 140 Ga. App. 300, 303-305 (3) (231 SE2d 780) (1976); *Sisk v. Carney*, 121 Ga. App. 560, 563 (4) (174 SE2d 456) (1970); *Ga. Hydratane Gas v. White*, 110 Ga. App. 826, 837 (2) (140 SE2d 129) (1964).

Although damages must be proven with reasonable certainty and without speculation, it is not necessary that the party prove exact figures. *Paul Davis Systems of Savannah v. Peth*, 201 Ga. App. 734, 735-736 (1) (412 SE2d 279) (1991); *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 740 (6) (320 SE2d 863) (1984). Any evidence tending to establish a reasonable approximation of fair market value will create a jury question. *Adamson Co. v. Owens-Illinois Dev. Corp.*, supra at 654; *Sentry Ins. v. Henderson*, 138 Ga. App. 495, 498 (4) (226 SE2d 759) (1976); *Corvair Furniture Mfg. Co. v. Bull*, 125 Ga. App. 141, 150 (8) (186 SE2d 559) (1971); *Ga. Hydratane Gas v. White*, supra at 826.

> Where evidence shows that the tangible personal property held for resale did not change in condition between the time of wholesale purchase and the loss, the jury may infer that the fair market wholesale value immediately prior to the loss and the wholesale purchase price were the same, because a rebuttable presumption arises of continuing condition.

(Citation and footnote omitted.) *Champion v. Dodson*, supra at 288 (inventory of hardware which did not deteriorate or change in value from the time of wholesale purchase); see also *Atlanta Commercial Builders v. Polinsky*, 148 Ga. App. 181, 182-183 (1) (250 SE2d 781) (1978) (the itemized inventory of a western-wear store destroyed in a fire was proven by the owner's testimony only from inventory records and wholesale costs without a specific showing of the fair market value immediately prior to the fire).

> Since inventory was held for resale in the same condition as it was at the time of wholesale purchase, then the jury may infer that the retail fair market value will exceed the wholesale purchase price and that the fair market value at wholesale remains the same as the wholesale cost, because inventory continues in the same condition and has a markup for overhead and profit.

*Champion v. Dodson*, supra at 289.

(c) There was direct and uncontradicted testimony from both the owner Hodges and manufacturer's agent Toone that all of the itemized inventory was kept safely upon shelves in the original cartons or containers and that no deterioration of the parts occurred prior to the fire. Further, there was other uncontradicted testimony that nothing occurred to the parts to cause them to lose value; in fact, the testimony was that the inventory wholesale prices increased. Although Hodges may have sought to recover damages for the increase in value of the lost inventory or lost profits at retail sale, if he failed to prove the fair market value, then he was entitled to recover only his costs for the lost inventory where such fair market value at wholesale was established, as in this case. The evidence was that $52,000 of inventory was restored to marketable condition and that the fair market retail value of $139,545.83 was only for the inventory damaged, which had a salvage value of only $2,500. Hodges calculated his wholesale cost as 15 percent below the retail value, which represented his dealer discount; by this method Hodges testified that his wholesale cost was $111,900. The evidence was that most of the inventory obtained from Williams had a dealer discount of only ten percent so that Hodges calculated his damages at a lower fair market wholesale value of fifteen percent off the retail fair market value. Toone testified that the fair market value of the inventory on the date of loss was $131,647.05. Thus, the jury, at a minimum, could infer that the fair market wholesale value of the parts did not change from the wholesale purchase price and could determine the wholesale purchase price from all of the evidence before them. Even if the plaintiff failed to

prove the retail value of the inventory, then he was able to recover the lesser damages for the wholesale inventory fair market value. In any event, there was sufficient evidence for a jury to decide both the fair market value of the retail and wholesale values of the inventory; therefore, the trial court erred in directing the verdict.

> The evidence as to value was sufficient to support the verdict. [Hodges] presented a detailed, itemized statement describing each item of the damaged property and showing its [approximate] wholesale cost, the total cost being $[111,900]. [Hodges] testified that he had [45] years of experience buying and selling such items for the retail trade and that his normal retail markup on the items would have been [15 percent] for everything. . . . He further stated that he had [a salvage value of $2,500 for] those goods which he had been able to salvage from the [water]. The jury[could determine damages without speculation or guess work that] fell between the wholesale cost and the retail price [($139,545.83)] as established by the evidence.

*Atlanta Commercial Builders v. Polinsky,* supra at 182 (1); accord *Champion v. Dodson,* supra at 290.

Even if the purchase price of all of the other items of inventory had not been sufficiently proven, which it had, then the records show that Hodges had a specific memory that he paid $6,000 each for three planetary assemblies, which Toone testified were worth $9,000 each at the time of trial, and that he paid $3,200 each for seven blowers for a total of $22,400. Thus, $28,400 in purchase cost was shown with a fair market retail value of $40,400. The directing of the verdict as to such damages was error.

2. Hodges contends that the trial court erred by directing the verdict in concluding that Hodges had not presented evidence that the records had been destroyed precluding proof of the original purchase price and dealer discount. We agree. Since this issue may arise upon retrial, then we will address it.

No "highest and best evidence" objection was made at trial. OCGA §§ 24-5-1 (a); 24-5-4; *Fitzgerald v. Adams,* 9 Ga. 471, 473 (1) (1851) (substitution of oral testimony for the original writing). "The cases which most frequently call for the application of this rule, are those which relate to the substitution of oral for written evidence." Id. at 474. Even if such "best evidence" objection had been made at trial, it would have been an abuse of discretion for the trial court to deny the admission of oral testimony as secondary evidence after the showing of the destruction of the invoices; Hodges testified that all but three invoices for his inventory had been destroyed in the water damage

and offered secondary evidence as to his wholesale costs, i.e., his testimony and the testimony of Toone. *Ellis v. Doe*, 10 Ga. 253, 259-260 (1) (1851) (exercise of due diligence in search for primary evidence before secondary evidence admitted). Thus, Hodges satisfied the requirement for submitting secondary evidence, oral testimony, by establishing that the primary evidence, purchase invoices, had been destroyed and that higher secondary evidence from Williams was unavailable. OCGA §§ 24-5-1 (b); 24-5-2; 24-5-3; 24-5-4; *Ellis v. Doe*, supra at 259; *Mulkey v. State*, 155 Ga. App. 304, 306-307 (270 SE2d 816) (1980) (an abuse of discretion to deny oral testimony when written notes were shown to have been destroyed). Here the original writings, i.e., parts invoices, were destroyed in the fire and water; therefore, the original documents were fully accounted for as unavailable so that, as a matter of necessity, secondary evidence in the form of oral testimony was admissible to prove the purchase price of the inventory. OCGA § 24-5-4; *Mulkey v. State*, supra at 306-307; *Lester v. S. J. Alexander, Inc.*, 127 Ga. App. 470, 473-474 (2) (193 SE2d 860) (1972). Toone testified that Williams would have great difficulty in reconstructing the wholesale price for each inventory item, because the parts numbers had changed six times and it was no longer using the old IBM computer system. OCGA § 24-5-5; *Dedousis v. First Nat. Bank &c.*, 181 Ga. App. 425, 427 (4) (352 SE2d 577) (1986).

The oral evidence of Hodges and Toone as to the wholesale fair market value and as to the dealer's discount, based upon the actual damaged parts, was sufficient secondary evidence to go to the jury. The trial court erred in not treating the secondary evidence as competent on the motion for directed verdict.

*Judgment reversed. Ruffin, P. J., and Adams, J., concur.*

DECIDED JULY 29, 2004 —

*John R. Ferrelle*, for appellant.

*Whelchel, Brown, Readdick & Bumgartner, Gregory T. Carter, Walter D. Adams*, for appellees.