**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 30, 2020**

# In the Court of Appeals of Georgia

A20A0336. SUMMERS v. THE STATE.

MILLER, Presiding Judge.

Mary Elizabeth Summers appeals from the trial court's restitution order imposed after she pled guilty to two counts of burglary and two counts of theft by taking. On appeal, she argues that the State failed to present sufficient evidence to support the entire restitution award and that the trial court erred by imposing a restitution amount above $25,000 when she was convicted only of theft by taking between $5,000 and $25,000. We conclude that the State presented sufficient evidence to support the amount of the restitution award and that Summers has not demonstrated that the amount of restitution should be capped at $25,000 per victim in this particular case. We therefore affirm the trial court's restitution order.

[A] trial court determines the proper amount and type of restitution by a preponderance of the evidence. The State bears the burden of demonstrating the amount of the loss sustained by a victim as a result of the offense, and the amount of restitution ordered by the trial court may be equal to or less than, but not more than, the victim's damages. . . . On appeal from an order of restitution, we review the record to determine whether each party has met his or her specified burden and whether a restitution award was supported by the preponderance of the evidence.

(Citations and punctuation omitted.) *Overby v. State*, 315 Ga. App. 735, 736-737 (728 SE2d 278) (2012).

A grand jury indicted Summers on two counts of first-degree burglary (OCGA § 16-7-1 (b)) and two counts of theft by taking (OCGA § 16-8-2). The indictment alleged that, between 2016 and 2017, Summers broke into two of her neighbors' houses and stole various pieces of jewelry and that, for each theft by taking count, the value of the stolen property was between $5,000 and $25,000. Summers pled guilty to all counts pursuant to a plea agreement. The trial court merged the two theft by taking counts into the two burglary counts, sentenced Summers to 10 years' probation, and imposed a $1,000 fine.

The trial court then held a hearing on the issue of restitution. At the hearing, the State presented evidence through the testimony of the two victims, Tracy Beegan

2

and Sherrin Pittman, while Summers testified in her defense. Beegan and Pittman both testified as to the value of each piece of stolen jewelry, whereas Summers testified as to her financial situation and did not testify or present evidence as to the value of the jewelry. Following the hearing, the trial court found that the total fair market value of the stolen jewelry was $76,538, and it ordered Summers to pay that amount in restitution, with $1,688 to be paid to Beegan and $74,850 to be paid to Pittman. This appeal followed.

1. Summers first argues that the State failed to present sufficient evidence to establish the fair market value of each piece of jewelry. We conclude that the State presented sufficient evidence to support the restitution award.

"The correct determination for the amount of restitution is the fair market value of the property rather than the replacement cost," and the fair market value of the property taken "must be determined exactly." (Citations omitted.) *Gray v. State*, 273 Ga. App. 747, 749 (2) (615 SE2d 834) (2005).

> In meeting its burden, the State may present testimony from the victim, who is familiar with the affected items. However, the victim's opinion as to their value must be fact-supported. . . . It has long been the rule that an owner of property may not testify as to his opinion of the value of the property without giving his reasons therefor, and an opinion as to value based solely on cost price is inadmissible in evidence as it has no

probative value. To be admissible, testimony as to cost price must be coupled with other evidence such as a showing of the condition of the item both at the time of purchase and at the time its value is in issue.

(Citations omitted.) Id. at 749-750 (2).

*(a) The Restitution Award to Beegan*

At the restitution hearing, Beegan testified that she "ha[d] purchased jewelry a lot in her life." Beegan testified that Summers stole numerous pieces of jewelry each with varying valuations up to $10,000. Since the trial court awarded restitution in the amount of $1,688, it appears that the restitution award was based on only two pieces of jewelry: (1) a diamond ring with forty small stones, which Beegan had obtained in 2004 for $1,500 and was in "perfect condition;" and (2) a diamond and gold band, which Beegan had purchased in 2002 for $188.86 and was in "good condition."

We conclude that this evidence was sufficient to support the restitution award to Beegan. Initially, we note that it appears that Beegan did not offer any particular specific opinion as to the fair market value of these two items of jewelry at the time of the theft. However, we have recognized that, "[a]s to everyday objects, such as automobiles, the [factfinder] may draw from their own experience in forming estimates of market value." (Citation omitted.) *Champion v. Dodson*, 263 Ga. App.

4

286, 291 (587 SE2d 402) (2003).[1] We readily conclude that typical items of jewelry, such as the ones at issue in this case, fall within this category of everyday common items with which the average person has some knowledge and experience in terms of their value and market characteristics. Thus, "the [State] need not offer any opinion evidence as to value and so long as the evidence contains facts upon which the [factfinder] may legitimately exercise their own knowledge and ideas, the question of value is properly left to the [factfinder]." (Citation omitted.) Id.

In addition to the cost price, Beegan testified as to the age and condition of these two pieces of jewelry. From these circumstances, the trial court could legitimately come to its own conclusion as to the fair market value of the jewelry at the time of the theft, and it apparently concluded that the jewelry had not depreciated in value from the time of purchase. See *Austin v. State*, 315 Ga. App. 713, 715 (727 SE2d 535) (2012) ("[T]he fair market value may be established by testimony

---

[1] Because Georgia law defines the amount of damages that a victim can recover through restitution as "all special damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced," OCGA § 17-14-2 (2), we have often cited to our civil case law on damages to interpret how we evaluate the amount to be awarded in restitution or how we should calculate an item's fair market value. See, e.g., *Jackson v. State*, 150 Ga. App. 617, 620 (552 SE2d 546) (2001) (citing to *Sisk v. Carney*, 121 Ga. App. 560 (174 SE2d 456) (1970)); *Gaskin v. State*, 221 Ga. App. 142, 153 (3) (b) (470 SE2d 531) (1996) (citing to *Hoard v. Wiley*, 113 Ga. App. 328 (147 SE2d 782) (1966)).

5

regarding the original price, coupled with the age of the item and its condition at the time of the crime.") (citation omitted). Since there was no contrary evidence in the record showing that items of jewelry do depreciate in value over time, the preponderance of the evidence supports the amount of restitution the trial court ordered, and so we affirm the order granting restitution to Beegan.

*(b) The Restitution Award to Pittman*

Pittman testified that she visited a jewelry store, Brown and Company, to assist with the valuation of her stolen jewelry. Pittman testified that she went "[t]hrough their estate jewelry what matched—you know, came close to the size of the piece, as well as if it was white, gold, platinum, or yellow gold. The pieces that they were unaware of or unsure of, I went through an estate—estate jeweler" so as to come up with a value for each piece of jewelry. She testified that Summers stole the following pieces of jewelry from her:[2]

    - a gold macaroni bracelet in "good condition," which she received in 1986 and which Brown and Company valued at $1,100 based on a similar piece;

_____

[2] Pittman testified that she lost at least five other pieces (a pearl necklace, aquamarine earrings, an aquamarine stone, diamond earrings, and a panda necklace), but she did not provide an opinion as to their value.

- a diamond flower ring that she received in 2004 or 2005, and which Brown and Company estimated to be $2,400 based on "a very similar piece" at Brown and Company that was smaller than her ring;

- a diamond half-hooped earring, which was in "good" condition and had been purchased before 2003 for $800;

- a diamond yellow gold x-ring, which had been purchased for $600, but Pittman could not remember when it was purchased;

- a shell dome ring with diamonds that she received during the 1980s, which she valued at $500 based on a similar ring at Brown and Company that did not have diamonds;

- a one-carat diamond ring that she had received from her grandparents in 2009, which was in "good to fair condition," and which Brown and Company valued at $8,500 based on a similar ring with a slightly different design;

- a pearl bracelet with a broken clasp, which she had received in 1989, for which Brown and Company had a comparable bracelet in their estate selection selling for $900, but due to the broken clasp, the value would have gone down "a couple of hundred dollars;"

- a pair of gold, pearl, and diamond earrings, which were in "great shape" and which Pittman had received in 1989, and which Brown and Company estimated to be worth $1,600 based on a similar pair of earrings with some style differences;

- a Mikimoto pearl ring, which Brown and Company estimated to be worth $900;

- an aquamarine ring in "almost perfect condition," which Brown and Company valued at "$7,800 up" based on a similar ring but with a different carat;

- another aquamarine ring, which Brown and Company estimated to be worth $4,000 based on a very similar ring that "might have been slightly larger in size;"

- a Burmese apple jade ring, which a separate estate jeweler estimated would be worth $17,000;

- white and gold hoop earrings, which Pittman's ex-husband purchased for $300 in 2002 and were in the same condition as when she received them;

- a diamond horseshoe ring, which was in "great" condition, for which Pittman obtained an "exact same" replacement from an antique and estate jeweler for $960;

- a buckle ring that Pittman had inherited from her grandmother, for which Pittman found an exact replica from an antique and estate jeweler for $1,410;

8

- a white gold cross in "perfect" condition which Pittman had purchased for $600 in 2009;

- an Ebel watch, which Pittman had purchased for $2,800 in 1998, but which couldn't be replaced by Brown and Company "for less than $4,000.00;"

- a square-cut emerald ring, which was appraised by a jeweler in 2005 at a value of $9,450;

- a Patek Philippe bracelet watch which was appraised by a jeweler in 2005 at a value of $12,750;

- another square-cut emerald, which was appraised by a jeweler in 2005 at a value of $8,560; and

- a panda ring, which was in good condition, with Pittman indicating that she saw another ring "that looked exactly the same" for sale from an antique jeweler for $1,100.

As an initial matter, we have added up the total value of stolen jewelry to which Pittman testified, and we arrived at a sum of $84,030, which is a difference of $9,180 from the $74,850 that the State argued for below (and which amount the trial court accepted). The State did not explain in detail how it arrived at its total sum, nor did it explain which pieces of jewelry were included or excluded from its calculation.

9

Unlike the discrepancy noted above between the total value of jewelry to which Beegan testified and the final amount the trial court ordered, the basis of this difference is not apparent to us from a review of the record.[3] From this record, therefore, we simply cannot tell how the State and the trial court arrived at that number. Because this discrepancy is in Summers' favor, however, it does not automatically require us to vacate or reverse the restitution order. Cf. OCGA § 17-14-9 ("The amount of restitution ordered shall not exceed the victim's damages."). We will thus proceed to analyze the evidence presented of the value of Pittman's jewelry to see if it was sufficient to support at least the amount that the trial court ordered.

We first conclude that the preponderance of the evidence supported the value of the jewelry for which Pittman obtained, and testified to, an express estimate from Brown and Company or the separate estate jeweler, as such estimate constituted opinion evidence from a source that dealt in the trade of buying and selling jewelry. See *Gray*, supra, 273 Ga. App. at 750 (2) ("Opinion evidence as to the value of an

---

[3] The difference between the total value of stolen jewelry to which Beegan testified and the final amount of restitution awarded to her can be at least partially explained by the facts that she had received some compensation from her insurance and that she had recovered at least one piece. By contrast, Pittman testified that she did not file any insurance claims, nor has she otherwise received any insurance payouts that could offset the amount of restitution.

item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and [she] must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.") (citation omitted). From our review of the record, Pittman provided an estimate from Brown and Company for the gold macaroni bracelet, the diamond flower ring, the one-carat diamond ring, the gold, pearl, and diamond earrings, the Mikimoto pearl ring, the two aquamarine rings, and the jade ring. In each of these cases, the estimated value from Brown and Company was supported by Pittman's testimony as to the basis for the valuation, and the circumstances demonstrate that the valuation was based on the value at the time the jewelry was stolen. We conclude that proper opinion evidence supported the value given for these items.

We further conclude that a preponderance of the evidence supported the value of the three pieces of jewelry for which Pittman provided appraisal values from 2005 (the two square-cut emeralds and the Patek Phillipe watch), as Pittman accompanied such values with descriptions of the items and how the condition of these items affected the value. Based on this evidence about the jewelry's condition, the trial court, as factfinder, could determine from this testimony about the jewelry's condition

11

whether the value had materially changed between the 2005 appraisal and the theft. *Champion*, supra, 263 Ga. App. at 291. Additionally, Pittman provided the purchase price, age, and condition of the diamond half-hooped earring, the white and gold hoop earrings, and the white gold cross. As noted above in our discussion of Beegan's jewelry, these circumstances were sufficient for the trial court to come to a legitimate conclusion as to their value. See *Austin*, supra, 315 Ga. App. at 715; *Champion*, supra, 263 Ga. App. at 291.

By our calculations, the total value of these items is $75,760, which is more than the $74,850 the trial court ordered due to Pittman. We therefore need not go further and analyze the evidence regarding the remaining pieces. We conclude that a preponderance of the evidence supported the amount of restitution ordered to both Beegan and Pittman.

2. Summers further argues that the trial court erred by imposing a restitution award to Pittman in excess of $25,000 when she was indicted on, and convicted of, theft by taking between $5,000 and $25,000. Pretermitting whether this argument in and of itself is meritorious, the trial court here merged each of the theft by taking convictions into the two burglary convictions, and "a conviction that merges as a matter of law or fact with another conviction is void[.]" *Nazario v. State*, 293 Ga.

12

480, 485 (2) (b) (746 SE2d 109) (2013). The trial court did not mention the theft by taking convictions in its restitution order, and the trial court's restitution order instead clearly indicates that the trial court imposed restitution based on the burglary convictions, not the theft by taking convictions.[4] Therefore, because the theft by taking convictions are void, and because they did not provide the eventual basis for the restitution order, this argument does not present a meritorious reason for capping the amount of restitution at $25,000 per victim.

For these reasons, we affirm the trial court's restitution order.

*Judgment affirmed. Mercier and Coomer, JJ., concur.*

---

[4] We further note that Summers did not argue below, nor does she argue on appeal, that the indictment caused her to be unduly surprised by the eventual amount of restitution.