**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

April 27, 2012

# In the Court of Appeals of Georgia

A12A0464. AUSTIN v. THE STATE.

PHIPPS, Presiding Judge.

John Austin II pled guilty to felony theft by taking another person's property: several pieces of jewelry, a camera, an iPod shuffle, a scuba knife, a rifle, a pistol, and various precious rare coins. He was given a probated sentence, a condition of which required him to pay restitution in an amount to be determined. After a restitution hearing, the court entered an order setting restitution at $20,500 in connection with those stolen items that were not recovered by the owner. In this appeal, Austin contends that the amount of restitution was not supported by sufficient evidence. We agree and therefore vacate the restitution order and remand the case for proceedings not inconsistent with this opinion.

In determining the amount of restitution, the ordering authority shall consider, inter alia, the amount of damages.[1] "Damages," in this context, means "all special damages which a victim could recover against an offender in a civil action . . . based on the same act or acts for which the offender is sentenced, except punitive damages and damages for pain and suffering, mental anguish, or loss of consortium."[2] "The amount of restitution ordered shall not exceed the victim's damages."[3] "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the state."[4]

> [T]he sufficiency of evidence to support an order of restitution is measured by the civil standard of preponderance of the evidence. It is well established that review of evidence by this Court is limited to questions of sufficiency. Accordingly, determinations regarding the credibility of the witnesses and the weight to be accorded conflicting

---

[1] OCGA § 17-14-10 (a) (4).

[2] OCGA § 17-14-2 (2).

[3] OCGA § 17-14-9; see *Cardwell v. State*, 225 Ga. App. 337, 338 (484 SE2d 38) (1997) (amount of restitution recoverable in a criminal case may not exceed that which would be recoverable in a civil action).

[4] OCGA § 17-14-7 (b).

evidence are for the trial court, and this Court will not interfere with such determinations as long as there is any evidence to support them.[5]

At the restitution hearing, the owner of the stolen property was the state's sole witness regarding damages. He testified that, of the property stolen, only his pistol and coin collection had not been recovered. He described his pistol and testified that to replace it would cost approximately $500. He also provided information about his coin collection, then gave a range of its worth at approximately $20,000 to $30,000. At the end of the hearing, the court remarked that it was accepting the low end of that range to reach a total restitution amount of $20,500.

On appeal, Austin challenges the restitution amount, asserting that the state failed to provide sufficient evidence as to the fair market value of the items at issue.

> In evaluating the evidence presented to the trier of fact, we consider whether the evidence shows the fair market value of these items, the condition of the items, or an appropriate method of discounting the items from their replacement value to their fair market value. Without any such evidence on the record, we cannot say that the State has shouldered its

---

[5] *Coile v. State*, 311 Ga. App. 537-538 (716 SE2d 527) (2011) (citations and punctuation omitted).

burden of proving the fair market value of the [stolen] items upon which an order of restitution may be based.[6]

We consider first the evidence pertaining to the gun – a ".25 caliber automatic pistol, [with] cherry wood grips." The owner testified that he had purchased the gun about 20 years earlier for $125 and that he had never used the weapon. He acknowledged that he had not asked any gun dealer about the current value of such a gun; however, he claimed that to replace his pistol would cost "probably $500."

While it appears that the trial court accepted the replacement cost as the fair market value of the gun, "[t]he correct determination for the amount of restitution is the fair market value of the property rather than the replacement cost."[7] Moreover, "[i]t is not sufficient for a victim merely to provide either the original price or the replacement costs of any item. Rather, the fair market value *may* be established by testimony regarding the original price, coupled with the age of the item and its condition at the time of the crime."[8] Here, although the owner testified that he had

---

[6] *Gray v. State*, 273 Ga. App. 747, 749 (2) (615 SE2d 834) (2005) (citation omitted).

[7] Id. (citation and footnote omitted).

[8] *In the Interest of R. V.*, 283 Ga. App. 355, 356 (2) (641 SE2d 591) (2007) (footnotes omitted; emphasis supplied), disapproved on other grounds, *McCart v.*

4

never used the pistol, that particular aspect of the property – even coupled with its original price and replacement cost – did not provide for any meaningful method of arriving at the fair market value of the 20-year-old gun.[9] Because the state therefore failed to adduce sufficient evidence to support an amount of $500 in damages for the pistol, that portion of the restitution amount was unauthorized.[10]

Turning to the $20,000 figure used for the coin collection, we find again an evidentiary deficiency. At the end of the restitution hearing, the trial court remarked that, although the owner had provided neither the exact number of coins stolen nor an itemized valuation for those coins, "there's enough testimony and enough experience on [the owner's] part to accept the low-end of his estimate."

---

*State*, 289 Ga. App. 830, 833 (658 SE2d 465) (2008).

[9] Cf. *Sutton v. State*, 190 Ga. App. 56, 57 (1) (378 SE2d 491) (1989) (value assigned to the stolen truck for which restitution was ordered was based upon a consideration of the fair market value of a truck of comparable age and condition, utilizing a survey predicated on representative samples).

[10] See *In the Interest of R. V.*, supra (evidence was insufficient to support the restitution amount, where vast majority of the victim's testimony regarding damages was limited to the original price or the replacement costs of the items damaged or stolen, and some of the victim's testimony regarding repair quotes constituted inadmissible hearsay); see also *Turner v. State*, 312 Ga. App. 799, 805 (2) (720 SE2d 264) (2011) (where nothing in the record showed what was encompassed by the addition of $48,988.44 in "accounting/auditing/attorney fees associated with the theft," that portion of the restitution award was unauthorized); *Cardwell*, supra.

Indeed, "[t]he victim's testimony can establish the fair market value as long as the victim's testimony is fact-based rather than mere conjecture."[11]

> Opinion evidence as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience or familiarity with the value of the property or similar property and he must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion.[12]

"Absent this foundation, the opinion as to value is inadmissible as it is nothing more than an unsupported conclusion or guess of the witness."[13]

Here, the owner testified that he kept in a bag "roughly . . . around about a hundred" old coins, which had been "handed down through three generations: my grandmother, my mother and to me. And they are dated from 1801." Some of the coins were 150 to 175 years old. The bag contained "gold coins, as well as silver coins." Also in the coin bag, the owner testified, were silver dollars, "half dimes, V nickels, V dimes, and V quarters." He also had in the bag four rolls of "silver quarters," but he did not know how many such quarters were contained in a single roll.

---

[11] *In the Interest of R. V.*, supra (footnote omitted).

[12] *Gray*, supra at 750 (2) (citation omitted).

[13] Id. (citation, punctuation, and footnote omitted).

The owner was duly asked whether, over the last several years, he had been able to ascertain the fair market value of his coins, and he answered: "No, sir. I had quit dealing in coins after – right before I got married." But nothing in the record makes relevant the owner's previous "dealing in coins" – that is, nothing in the record sheds light upon the extent of such dealing or even when it (either the coin dealing or his marriage ceremony) occurred. The "old coins" had not been acquired through his "dealing in coins," but had been handed down to him by his mother and grandmother; acquiring the coins through that channel provided no evidence of their fair market value. What is more, the owner admitted that he had never had any of the coins in his collection appraised; had never contacted a coin dealer concerning the fair market value of the coins; had never found his coins in any price guide; had never found any reference to his coins at a library; had never consulted with the American Numismatic Association about his coins; and had never sought to have any of the coins insured separately from his homeowners' insurance policy. When asked to explain how he had arrived at a $20,000-$30,000 range for his stolen coins, he answered: "That's what they would be valued at, I imagine, to a coin collector."

The owner's opinion lacked the requisite foundation because there was no showing that he had some knowledge, experience or familiarity with the value of his

7

coins. Absent this foundation, the owner's opinion was nothing more than conjecture, an unsupported conclusion, or a guess.[14] Because the state therefore failed to adduce sufficient evidence to determine the fair market value of the coin collection, the $20,000 portion of the restitution amount was also unauthorized.[15]

For the reasons given above, the restitution order is vacated, and this case is remanded for a new restitution hearing and entry of a new order.[16]

*Order of restitution vacated and case remanded with direction. Ellington, C. J., and Dillard, J., concur.*

---

[14] See id.; see also *In the Interest of R. V.*, supra.

[15] See *Gray*, supra at 750-751 (2) (evidence was insufficient to sustain court's restitution award amount, where the sole witness on damages failed to give a fact-supported opinion, but based her estimation on numbers she "pulled . . . out of [her] head"); see also *Hawthorne v. State*, 285 Ga. App. 196, 198 (1) (648 SE2d 387) (2007). See generally *Sisk v. Carney*, 121 Ga. App. 560, 563-564 (4) (174 SE2d 456) (1970).

[16] See *Gray*, supra at 751 (2) ("[W]here we have found the restitution evidence insufficient to sustain the award, we have consistently remanded the case for a new restitution hearing."); see, e.g., *Gaskin v. State*, 221 Ga. App. 142, 145 (3) (b) (470 SE2d 531) (1996) (where restitution amount was not authorized by evidence, restitution order was vacated, and case remanded for new restitution hearing and entry of new order).